NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California  94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

ELIZABETH S. LETCHER (SBN 172986)
eletcher@heraca.org
NOAH ZINNER (SBN 247581)
nzinner@heraca.org
**HOUSING AND ECONOMIC RIGHTS ADVOCATES**
1814 Franklin Street, Suite 1040
Oakland, California  94612
Telephone:    (510) 271-8443
Facsimile:    (510) 280-2548

*Attorneys for Plaintiff Gena Hanson, Individually and on Behalf of All Others Similarly Situated*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GENA HANSON**, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  vs.<br><br>**JQD, LLC, d/b/a PRO SOLUTIONS**, a California corporation;<br><br>  Defendant. | Case No: _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.<br><br>2.  California Business & Professions Code § 17200<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  JURISDICTION AND VENUE ...................................................................................... 3

III. PARTIES ........................................................................................................................... 3

IV.  FACTUAL ALLEGATIONS .......................................................................................... 3

    A.   The California Legislature Established Protections for Homeowner Association Members Specifically to Prevent the Type of Abuses Perpetrated by Defendant ........................................................................................ 3

    B.   Defendant's Business Practices ............................................................................. 4

    C.   Plaintiff's Experience ............................................................................................. 6

V.   CLASS ACTION ALLEGATIONS ................................................................................ 9

VI.  CAUSES OF ACTION ................................................................................................... 11

    **FIRST CAUSE OF ACTION**
    FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")
    15 U.S.C. § 1692, *et seq.* ............................................................................................ 11

    **SECOND CAUSE OF ACTION**
    VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.* ......................................... 13

VII. PRAYER FOR RELIEF ................................................................................................ 14

DEMAND FOR JURY TRIAL ................................................................................................ 16

Plaintiff GENA HANSON, individually, and on behalf of a proposed class of all others similarly situated, and demanding a jury trial, brings this action against defendants JQD, LLC d/b/a PRO SOLUTIONS (individually and collectively, "Defendant"), and alleges, on information and belief (except as to those allegations relating to plaintiff herself, which are asserted on personal knowledge), as follows:

## I. INTRODUCTION

1. This is a consumer class action challenging the illegal and grossly unfair business practices of defendant debt collector JQD, LLC d/b/a Pro Solutions ("Pro Solutions"). Plaintiff brings this action on her own behalf and that of all similarly situated individuals targeted by Pro Solutions' abusive debt collection practices.

2. Pro Solutions' collection scheme is essentially parasitic: It takes over the delinquent accounts of individual members from their homeowner associations ("HOAs") and then extorts unconscionable fees from the delinquent homeowners – fees that the homeowners do not owe.

3. Pro Solutions gains control of homeowner accounts by offering HOAs collection services at no cost to the HOA, with the caveat that the HOA must stop communicating with the homeowner and cede control and oversight over the account to Pro Solutions.

4. Once Pro Solutions takes over an account, it gouges the homeowner by piling on fees often exceeding the amount of the delinquency, and by refusing to allow homeowners to pay their actual HOA debt without first paying Pro Solutions' fees. Through these practices, Pro Solutions puts financially vulnerable homeowners in a spiral of debt from which they cannot escape.

5. Plaintiff Gena Hanson's experience provides a prime example of Pro Solutions' egregious practices. In early 2013, Ms. Hanson fell three (3) months behind on her HOA assessments while undergoing radiation and chemotherapy treatment for cancer. Upon returning home from three months in the hospital, Ms. Hanson was greeted by a "Notice of Intent to Lien" letter from Pro Solutions. The letter claimed that Ms. Hanson owed $1,996.74, *despite having only missed three assessments of $255 each*.

6. Ms. Hanson promptly attempted to pay the actual amounts of the delinquent assessments, and those payments were rejected and returned to her. Pro Solutions then threatened her with foreclosure, coercing her into a "repayment plan" requiring immediate payment of $1,000. From the $1,000 check, Pro Solutions applied only $255 to Ms. Hanson's assessment debt, and kept the remaining $745 of Ms.

Hanson's payment for itself.  Despite the $1,000 payment, Pro Solutions subsequently sent Ms. Hanson a statement claiming that she now owed $2,592.06, due in full on August 3, 2013.

7.     As Ms. Hanson attempted to get a straight answer from her HOA and Pro Solutions, Pro Solutions fictional charges and fees continued to pile up.  On October 11, 2013, Pro Solutions took the first step in foreclosing on Ms. Hanson, recording a lien on her home in the amount of $3,988.99.  This amount included $1,078 for Pro Solutions' "fees," in addition to a substantial overcharge for both interest and late fees.

8.     It is a basic principle that a creditor cannot demand penalties or fees from a debtor without legal basis – whether under contract or statute – for doing so.  Pro Solutions' collection practices ignore this basic rule.  Pro Solutions operates without a contractual or statutory justification for the vast majority of the fee demands it makes on consumers such as Ms. Hanson.

9.     For example, HOAs can only charge for third party collection fees they have actually paid.  *See* Civil Code § 1366(e)(1).  This rule keeps collection costs down because the HOA – in paying the cost of collection – has an incentive to comparison shop for reasonably priced collection services.  Pro Solutions upends this statutory scheme by offering HOAs "free" collection services and then directly charging captive homeowners whatever fees it chooses.

10.    HOA debts are statutorily subject to non-judicial foreclosure in California when the unpaid assessment balance, exclusive of fees, exceeds $1,800.  To prevent foreclosure on small HOA debts and debts consisting primarily of fees, the California legislature required HOAs to accept partial payments from homeowners and to apply these payments to the delinquent assessment balance before fees.

11.    Pro Solutions ignores these critical legal protections for homeowners in order to bully homeowners into paying its fees.  Homeowners are left with the unconscionable options of paying fees they do not owe, or foreclosure.

12.    As a result of Defendant's conduct as alleged herein, Defendant has reaped significant profits, and Plaintiff and the Class have suffered actual damages.  Plaintiff, for herself and on behalf of all similarly situated Californians, seeks damages from Pro Solutions and an end to its predatory collection practices.

**CLASS ACTION COMPLAINT**                                                                                                      2

II. **JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 based on Plaintiff's claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

14. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1362 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claims and arise out of a common nucleus of related facts. Plaintiff's state law claims are related to Plaintiff's federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in Federal District Court of Northern California pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events and conduct giving rise to the violations of law complained of herein occurred in or emanated from the Northern District of California. Plaintiff is domiciled in the Northern District of California, the wrongs complained of herein originated or emanated from the Northern District of California, and Defendant conducts business with consumers in the Northern District of California. In addition, upon information and belief, Defendant's principal place of business is in the Northern District of California.

III. **PARTIES**

16. Plaintiff Gena Hanson ("Plaintiff" or "Ms. Hanson") is and at all times mentioned herein was a resident of Alameda County, California.

17. Defendant JQD, LLC d/b/a Pro Solutions ("Pro Solutions") is a limited liability company believed to be organized under the laws of California with its principal place of business in Pittsburg, California. At all times mentioned herein, Defendant Pro Solutions engaged in debt collection activities throughout the State of California, including the Northern District of California.

IV. **FACTUAL ALLEGATIONS**

A. **The California Legislature Established Protections for Homeowner Association Members Specifically to Prevent the Type of Abuses Perpetrated by Defendant**

18. The Davis-Stirling Common Interest Development Act ("Davis-Stirling Act"), passed into law in 1985, establishes rules and regulations governing the operation of a common interest development ("CID") and the respective rights and duties of a homeowners' association ("HOA") and its members in

CLASS ACTION COMPLAINT                                                                                          3

1   the governance of the CID.  Cal. Civ. Code § 1350, *et seq*.

2   19.    Davis-Stirling Act protections are particularly important because HOA debt is subject to foreclosure without a prerequisite judgment or any other form of judicial oversight or due process.  The Davis-Stirling Act therefore "provides several protections to delinquent homeowners that may aid them in becoming current on their assessments, thus avoiding foreclosure."  *See* Sen. Com. on Judiciary, Analysis of Sen. Bill No. 561 (2011-2012 Reg. Sess.) Mar. 29, 2011, p.1-2.  Indeed, the legislative history of the Davis-Stirling Act indicates an intent to protect owners' equity in their homes when they fail to pay relatively small assessments to their common interest development associations.  Sen. Com. on Judiciary, Analysis of Sen. Bill No. 137 (2005-2006 Reg. Sess.) Mar. 29, 2005, p. 1.

20.    Among the critical protections afforded under the Davis-Stirling Act are:  (1) a limit on the amount of late fees, interest, and other delinquency related charges that an HOA may charge a delinquent homeowner; (2) a bar on foreclosure unless the homeowner owes more than $1,800 exclusive of penalties and fees; (3) the right to have partial payments applied to the delinquent balance; and (4) the right to have payments first applied towards delinquent assessments before they are applied to interest or collection expenses.  Together, these protections ensure that homeowners are not gouged by their HOAs for delinquency-related fees and that they aren't subjected to the threat of foreclosure simply because they are unable to pay such unwarranted fees.

B.    **Defendant's Business Practices**

21.    Pro Solutions violates every one of the aforementioned legal protections built into the Davis-Stirling Act to protect homeowners in communities with HOAs.  Among other things, Pro Solutions engages in the following conduct:

- Charges exorbitant collection fees, interest and delinquency related charges in excess of those permitted under the Davis-Stirling Act;
- Threatens foreclosure when homeowners owe less than $1,800 exclusive of penalties and fees;
- Refuses to accept partial payments, and in fact charges homeowners special added fees when it rejects partial payments; and
- Applies payments first to fees, interest and penalties instead of to delinquent

CLASS ACTION COMPLAINT                                                                                                      4

balances.

22. Pro Solutions is a company that contracts to collect delinquent assessments on behalf of dozens of HOAs throughout the state of California.

23. On its website, Pro Solutions advertises "No Cost Non-Judicial Collections" to HOAs. Pro Solutions' agreements with HOAs provide that Pro Solutions will demand payment of its fees directly from delinquent homeowners rather than from the HOA.

24. The Pro Solutions agreements provide that an HOA will only be liable for Pro Solutions' fees if the HOA agrees to reduce or waive Pro Solutions' claims to its fees on a homeowner account. Even though state law (Civil Code § 1363.810, *et seq.*) requires HOAs to meet and confer with members regarding payment disputes, Pro Solutions' agreements with HOAs also prohibit the HOA from communicating with members regarding accounts referred to Pro Solutions for collections.  Once an HOA has contracted with Pro Solutions, therefore, the HOA is effectively barred from engaging in dispute resolution with the homeowner since any such negotiations would violate the prohibition on direct communications and any agreement by the HOA to reduce collection-related fees could result in liability for the HOA.

25. Pro Solutions' abusive conduct starts immediately upon receiving a homeowner account from the HOA, when Pro Solutions contacts the homeowner with a demand that instantaneously adds hundreds of dollars of its own arbitrary fees – *e.g.* $185 for "Vesting Costs" – to the previous account balance and refuses to let the homeowner bring her account with the HOA current without first paying off Pro Solutions.

26.  Pro Solutions has no contractual privity with the HOA member homeowners it collects from and therefore has no independent legal basis for demanding any payment at all.  Rather, in each case it claims to be collecting its own excessive and arbitrary fees on behalf of the HOA.

27. To protect homeowners from threat of foreclosure on small HOA debts, California law limits what an HOA can charge a member in fees and penalties.  Civil Code § 1366(e)(2) and (3) authorize associations to charge statutory interest and late fees on delinquent monthly assessments. Section 1366(e)(1) allows HOAs to "recover…[r]easonable costs **incurred** in collecting the delinquent assessment, including reasonable attorney's fees."  Civil Code § 1366(e)(1) (emphasis added).  Civil Code

**CLASS ACTION COMPLAINT**                                                                                                 5

§ 1366.1 prohibits an HOA from charging a fee in excess of the amount necessary to defray the cost to the HOA. State law clearly does not permit HOAs to charge homeowner members for "costs" that the association never incurred and will never be obligated to pay.

28. The HOA does not actually pay Pro Solutions' collection fees itself, and therefore it cannot charge the member for them. Moreover, because Pro Solutions has no independent contractual or statutory rights against the member, it is not entitled to collect its fees from the homeowner either.

29. Pro Solutions exacerbates the injury to homeowners by refusing to accept partial payments from delinquent homeowners without Pro Solutions' prior approval, even **charging homeowners a fee** if they attempt to do so. Pro Solutions then conditions its acceptance of partial payments on the payments being applied to Pro Solutions' fees before the underlying HOA assessments.

30. Pro Solutions' practices keep homeowners in delinquency longer; increase the fees that Pro Solutions can charge them; and artificially keep homeowner assessment balances over the $1,800 statutory minimum for initiating foreclosure on HOA debt.

31. Adding insult to injury, Pro Solutions also regularly overcharges homeowners for interest and late fees on delinquent accounts.

32. Through these unlawful and unfair practices, Pro Solutions regularly demands and collects thousands of dollars of un-owed fees from homeowners under the threat of foreclosure and/or lawsuits. In fact, Pro Solutions' entire business model hinges on extracting un-owed and unaffordable fees from homeowners like Plaintiff.

C. **Plaintiff's Experience**

33. Plaintiff Gena Hanson owns and lives in a condominium in Livermore, California and is a member of the Vineyard Terrace Homeowners' Association.

34. Between January 2013 and March 2013, Ms. Hanson fell behind on her HOA assessments while undergoing radiation and chemotherapy treatment for cancer. At that time, Ms. Hanson's HOA assessments were approximately $255 per month.

35. Ms. Hanson completed her treatment and returned home the first week of April 2013. Just before returning home, Ms. Hanson attempted to catch up on the three months of HOA payments she had missed. Ms. Hanson first attempted to pay her past-due amount online, but she found herself locked out

1  of her account.  She then called her HOA and was told that her account had been assigned to Pro Solutions
2  for collection.

3  36. Upon her arrival home, Ms. Hanson found a March 19, 2013, "Notice of Intent to Lien"
4  letter from Pro Solutions.  A true and correct copy of this letter is attached as <u>Exhibit A</u>.  This letter stated
5  that Ms. Hanson had an outstanding account balance of $1,996.74.  Of this amount, $977 was listed as
6  "regular assessments," $123.70 was for "late charges," and $41.04 was for "interest."  The remaining
7  $855.70 – nearly 43% of the total balance demanded in the letter – was for charges variously described in
8  the letter as a "collection fee," "vesting costs," "mgmt. collection costs," and "other costs."

9  37. On April 22, 2013, Pro Solutions mailed Ms. Hanson a "Notice to Offer Payment Plan"
10 letter.  A true and correct copy of this letter is attached as <u>Exhibit B</u>.  This letter stated that her account
11 balance had increased to $2,296.74.  More than half of this amount was Pro Solutions' fees.

12 38. On April 25, 2013, Ms. Hanson mailed two checks totaling $848 to her HOA as payment
13 for her delinquent assessments from January 2013 through March 2013.

14 39. On May 8, 2013, Pro Solutions sent Ms. Hanson a letter stating that it had received her
15 $848 payment from her HOA, but was rejecting it entirely rather than apply it to her assessments because
16 the payment did not cover the full amount demanded by Pro Solutions.  A true and correct copy of this
17 letter is attached as <u>Exhibit C</u>.  Pro Solutions also told Ms. Hanson it had added an extra $255 charge to
18 her account for rejecting her payment.

19 40. During this period, Ms. Hanson repeatedly asked to meet with her HOA to dispute the fees
20 and make arrangements to bring her account current, but the HOA rebuffed her requests and told her to
21 speak with Pro Solutions.

22 41. On June 12, 2013, Ms. Hanson spoke with a Pro Solutions representative by telephone.
23 During this call, the representative told Ms. Hanson that Pro Solutions **would foreclose on her home**
24 unless Ms. Hanson paid the full amount Pro Solutions demanded.  The Pro Solutions representative told
25 Ms. Hanson that if she wanted to avoid foreclosure, she could enter into a free 45-day payment plan or
26 pay an additional sum for a longer repayment plan.

27 42. Feeling as if she had no other options to avoid even more fees or foreclosure, Ms. Hanson
28 verbally agreed to a 45-day payment plan.  The representative told Ms. Hanson to pay Pro Solutions

1  $1,000 immediately with the remaining balance due on August 3, 2013.

2  43.   On June 15, 2013, Ms. Hanson mailed a $1,000 check to Pro Solutions.

3  44.   On or around June 20, 2013, Pro Solutions sent Ms. Hanson a "Receipt of Payment" letter. A true and correct copy of this letter is attached as <u>Exhibit D</u>. The letter stated that Pro Solutions had applied Ms. Hanson's $1,000 check to "delinquent assessments and attendant charges" and that a remaining $2,592.06 balance would be due on August 3, 2013.

7  45.   According to Ms. Hanson's July 2013 Account Statement from Pro Solutions, only $255 of Ms. Hanson's $1,000 payment was applied to Ms. Hanson's assessment debt. Pro Solutions kept the remaining $745 of Ms. Hanson's payment for itself.

10  46.   Finally, after several formal requests from Ms. Hanson's counsel, the HOA "met and conferred" with Ms. Hanson by mail about her dispute of the collection fees Pro Solutions charged to her account.

13  47.   Ms. Hanson's September 13, 2013, meet and confer letter to the HOA requested that the HOA waive the egregious fees claimed by Pro Solutions, and offered that she would repay the entire balance of her monthly assessments, along with the late fees and interest for the months of January, February and March 2013. The HOA refused Ms. Hanson's request in a letter from its counsel dated September 25, 2013. A true and correct copy of this letter is attached as <u>Exhibit E</u>. In the letter, the HOA's counsel said that "once an account is turned over to Pro Solutions, Pro Solutions handles all actions and discussions regarding payment plans and requests for information, and the Board cannot interfere with the collection process without the risk of incurring additional collection costs." The letter goes on to state that the HOA "cannot force Pro Solutions to waive [collection] charges under its contract with Pro Solutions, so there is nothing more the Board can do."

23  48.   On October 11, 2013, Pro Solutions recorded a lien in the amount of $3,988.99 against Ms. Hanson's home on behalf of her HOA. This amount included $1,078 for Pro Solutions' fees, in addition to a substantial overcharge for both interest and late fees.

26  49.   Plaintiff is informed, and on that basis believes, that Pro Solutions has subjected other similarly situated homeowners in California to similar unlawful and unfair collections practices from November 18, 2009 to the present, including, but not limited to:  demanding and collecting fees from

homeowners that the homeowners do not owe; refusing to accept partial payments on HOA debts unless those payments are first applied to its own fees in violation of California law; using these tactics to artificially inflate the amount of delinquent assessments above the $1,800 statutory minimum for foreclosure; and using the threat of foreclosure or legal action to bully homeowners into paying debts they do not owe.

## V.     CLASS ACTION ALLEGATIONS

50.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

51.     Plaintiff brings this action on behalf of herself and all other similarly situated residents of California as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Class that Plaintiff seeks to represent is defined as follows:

> All current or former California homeowners whose HOA accounts were transferred to Pro Solutions and where Pro Solutions either:  (1) contacted the homeowner and stated a debt amount that included charges not incurred by the HOA; (2) contacted the homeowner and stated a debt amount that included interest and late fees in excess of those authorized under California law; (3) collected a payment from a homeowner that it applied to fees and/or excessive charges described in (1) and (2); (4) collected a payment from the homeowner and applied that payment to the costs of collection before delinquent assessments were paid in full: and/or (5) threatened or initiated non-judicial foreclosure on assessment debt below $1,800, exclusive of fees;

Excluded from the Class are:  Defendant, its officers, directors and employees, and any entity in which Pro Solutions has a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof.

52.     Throughout discovery in this litigation, Plaintiff may find it appropriate and/or necessary to amend the definition of the Class.  Plaintiff will formally define and designate a class definition when they seek to certify the Class alleged herein.

53.     **Numerosity.**  The members of the defined class are so numerous that individual joinder of all Class Members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that there are hundreds of members in the Class, although the precise size of the Class has not yet been ascertained.  Upon information and belief, the identities of Class Members are readily discernible using information

contained in records in the possession or control of Defendant.

54. **Commonality.**  Class-wide common questions of law and fact exist and predominate over questions affecting only individual Class members.  Common questions include, but are not limited to:

    a. Can Pro Solutions lawfully charge an HOA member who is delinquent on her assessments fees unrelated to costs actually incurred by the HOA?

    b. Does Pro Solutions' practice of collecting and/or attempting to collect amounts (including excessive interest, fees, charges and expenses incidental to the principal obligation) not expressly authorized by the agreement creating the debt violate the FDCPA and/or constitute unfair and unlawful business practices?

    c. Does Pro Solutions' practice of taking and/or threatening to take a non-judicial action to effect dispossession of property where it has no present right to possession and/or there is no present intention to take possession of the property violate the FDCPA and/or constitute unfair and unlawful business practices?

55. **Typicality.**  Class Representative Plaintiff's claims are typical of the claims of the class. She was subjected to the same violations of state and federal law and seeks the same types of damages, penalties, and other relief on the same theories and legal grounds as the members of the class she seeks to represent.

56. **Adequacy of Representation.**  Class Representative Plaintiff Hanson is an adequate representative of the Class because (a) her interests do not conflict with the interests of the individual Class members she seeks to represent; (b) she has retained counsel who are competent and experienced in complex class action litigation; and (c) she intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

57. **Superiority of Class Action.**  A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class.  Each Class Member has been damaged and is entitled to recovery by reason of Defendant's unlawful and unfair practices set forth above.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

58. This case is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendant acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole.

59. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because question of law and fact common to the proposed Class predominate over any question affecting only individual members of the proposed Class, and because a class action is superior to other available methods for fair and efficient adjudication of this litigation. Defendant's common and uniform practices subjected the proposed Class to excessive and unauthorized fees and charges under ongoing threat of foreclosure and lawsuits. Many Class Members' individual claims are too small to practically permit pursuit on an individual basis, even though the Class Members' rights have been violated by Defendant's practices. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments against Defendant's practices.

60. The Class is ascertainable because its members can be determined from Defendant's business records and/or the above definition of Class is sufficient to enable Class Members to identify themselves as Class Members.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

### 15 U.S.C. § 1692, *et seq.*

61. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

62. Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3). The monies allegedly owed by Plaintiff are "debt" within the meaning of 15 U.S.C. § 1692a(5).

63. Defendant purports to collect accounts from Plaintiff on behalf of HOAs to which Plaintiff belongs.

64. California law (Civil Code § 1366(e)(2) and (3)) limits the amount that an HOA may charge a delinquent homeowner to 12% annual interest and late fees equal to either 10% of the delinquent

assessment for that month or $10, whichever is greater.  Pro Solutions charged Plaintiff interest and late fees exceeding these limitations, even though it had no legal basis to claim these excessive fees from homeowners.

65. California law also limits any additional fees that an HOA can charge a delinquent homeowner to reasonable costs actually paid by the HOA. Civil Code §§ 1366(e)(1), 1366.1.  Pro Solutions charged Plaintiff for fees that the Plaintiffs HOA never paid, even though it had no legal basis to claim these fees from homeowners.

66. California law (Civil Code § 1367.1(b)) states that **any** payments made by the homeowner **shall first be applied** towards delinquent HOA assessments.  Pro Solutions asserted that it had no obligation to accept a payment less than the full amount it demanded and refused to accept any payment from Plaintiff unless the payment was in full or Plaintiff had entered into a payment agreement on the full balance including its fees.

67. Defendant also threatened foreclosure when it was not legally entitled to do so by unlawfully diverting homeowner payments from the principal debt balance to its own claimed fees, thereby artificially the principal debt balance above the statutory minimum for foreclosure.

68. Pro Solutions violated the FDCPA because it made false or misleading representations, including but not limited to:

    a. Falsely representing the nature, character and amount of the debt, in violation of § 1692e(2)(A);

    b. Falsely representing the services it rendered or compensation which it could lawfully receive in violation of § 1692e(2)(B);

    c. Threatening to take an action that could not legally be taken or was not intended to be taken in violation of § 1692e(5); and

    d. Using false representations or deceptive means to collect or attempt to collect a debt in violation of § 1692e(10).

69. Pro Solutions also violated the FDCPA because it used unfair or unconscionable means to collect or attempt to collect a debt, including but not limited to:

|   |   |   |
|---|---|---|
| 1 | a. | Collecting amounts (including excessive interest, fees, charges and expenses incidental to the principal obligation) not expressly authorized by the agreement creating the debt and/or not permitted by law in violation of § 1692f(1); and |
| 4 | b. | Taking and/or threatening to take a nonjudicial action to effect dispossession of property where it has no present right to possession and/or there is no present intention to take possession of the property in violation of § 1692f(6)(A) and (B). |

70.  As a result of Defendant's violations of the FDCPA, Plaintiff and other Class members have suffered damages.

71.  Plaintiff therefore seeks relief as described below.

## SECOND CAUSE OF ACTION

## VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*

72.  Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

73.  Defendant has engaged in, and continue to engage in, unlawful, unfair, and fraudulent business practices pursuant to Bus. & Prof. Code § 17200, *et seq.*

74.  Defendant has engaged in unlawful business practices by violating the FDCPA (15 U.S.C. §§ 1692e, 1692f) as alleged above.

75.  Defendant has engaged in fraudulent business practices by, among other conduct:
   a.  Falsely representing the nature, character and amount of the debt owed by Plaintiff;
   b.  Falsely representing the services it rendered or compensation which it could lawfully receive; and
   c.  Threatening to take an action that could not legally be taken or was not intended to be taken.

76.  Defendant has engaged in, and continues to engage in, unfair business practices including, but not limited to:
   a.  Demanding fees from homeowners on behalf of HOAs that neither Defendant nor the HOA can legally charge;
   b.  Requiring homeowners to pay its fees before permitting homeowners to pay down

**CLASS ACTION COMPLAINT**                                                                                                    13

    the actual amount of their debt;

 c. Refusing to accept payments from homeowners unless homeowners agree to waive important legal rights;

 d. Refusing to accept partial payments from homeowners unless homeowners agree to enter into a payment agreement for the full balance demanded;

 e. Threatening homeowners with foreclosure and/or a civil lawsuit unless they agree to pay all of Pro Solutions fees;

 f. Foreclosing and suing homeowners based on unlawfully inflated debts; and

 g. Entering into agreements with HOAs that are specifically intended to circumvent statutory protections for members of HOAs.

77. Plaintiff and Class members have suffered an injury in fact and lost money and/or property as a result of Defendant's actions.

78. Defendant will continue its unlawful and unfair practices unless restrained and enjoined by this Court.

79. Plaintiff therefore seeks relief as described below.

## VII. PRAYER FOR RELIEF

80. Plaintiff prays for relief for herself individually and all similarly situated Class members as follows:

 a. That the Court determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23 and appointing the named Plaintiff as Class Representative and their counsel as Class Counsel;

 b. That the Court enter a judgment declaring Pro Solutions' acts and practices complained of herein to be unlawful and unfair;

 c. That the Court award Plaintiff and the Plaintiff Class actual and statutory damages in an amount according to proof for Pro Solutions' violations of the FDCPA;

 d. That Pro Solutions be ordered to make restitution to Plaintiff and the Plaintiff Class pursuant to California Business & Professions Code § 17203;

 e. That the Court grant a preliminary and permanent order enjoining Pro Solutions

1   and its agents, employees, affiliates and/or subsidiaries, from collecting or
2   attempting to collect monies not authorized by law from Plaintiff and Plaintiff
3   Class, or from otherwise engaging in the unlawful and unfair acts and practices
4   alleged herein;

5   f.   That the Court award Plaintiff the costs of this action, including the fees and costs
6   of experts, together with reasonable attorney's fees, cost and expenses under 15
7   U.S.C. § 1692(k) or otherwise provided under law;

8   g.   That the Court grant Plaintiff and the Plaintiff Class pre-judgment interest on all
9   sums collected;

10  h.   And such other and further relief as this Court may deem appropriate.

Dated:  November 19, 2013                       **COTCHETT, PITRE & McCARTHY, LLP**

                                                By: */s/ Anne Marie Murphy*
                                                    NIALL P. McCARTHY
                                                    ANNE MARIE MURPHY
                                                    JUSTIN T. BERGER

Dated:  November 19, 2013                       **HOUSING AND ECONOMIC RIGHTS ADVOCATES**

                                                By: */s/ Elizabeth Letcher*
                                                    ELIZABETH S. LETCHER
                                                    NOAH ZINNER

                                                *Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Gena Hanson demands a trial by jury in this action.

Dated: November 19, 2013         **COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Anne Marie Murphy*
         NIALL P. McCARTHY
         ANNE MARIE MURPHY
         JUSTIN T. BERGER

Dated: November 19, 2013         **HOUSING AND ECONOMIC RIGHTS ADVOCATES**

By: */s/ Elizabeth Letcher*
         ELIZABETH S. LETCHER
         NOAH ZINNER

*Attorneys for Plaintiff and the Proposed Class*