IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENA HANSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JQD, LLC, d/b/a PRO SOLUTIONS, a California corporation,<br><br>    Defendant.<br>_____/ | No. 13-05377 RS<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART WITH LEAVE TO AMEND** |

## I. INTRODUCTION

In this putative class action, Plaintiff Gena Hanson challenges the business practices of defendant JQD LLC ("Pro Solutions"), a California-based debt collection company. Hanson's class action complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Pro Solutions moves to dismiss the complaint in its entirety, contending Hanson has failed to state a claim upon which relief can be granted. Although it appears that Hanson is not necessarily foreclosed from seeking relief under the FDCPA and the UCL, it is unclear which specific aspects of Pro Solutions' conduct are being targeted by her complaint. In particular, it is unclear which allegations hinge on the averment that Pro Solutions operates on a "no cost" basis when providing services to homeowners associations. This lack of clarity obfuscates the legal theories underlying her claims. Accordingly, the motion is granted in part with leave to amend.

## II. BACKGROUND[1]

Gena Hanson owns a condominium in Livermore, California. As required by her home purchase agreement, Hanson became a member of her local homeowners association ("HOA"), Vineyard Terrace Homeowners' Association, to which she is obligated to pay a monthly "assessment." In early 2013, after receiving a cancer diagnosis, Hanson was hospitalized for three months while she underwent radiation and chemotherapy treatments. During her absence, Hanson fell behind on her HOA assessments, which at that time were approximately $255 per month.

While Hanson was hospitalized, her HOA hired defendant Pro Solutions to collect Hanson's outstanding debt. Pro Solutions is a debt collection company that, according to its website, offers "No Cost Non-Judicial Collections" to HOAs throughout California. (Compl. § 23). Under Pro Solutions' "no cost" business model, the company obtains effective control of delinquent HOA member accounts and charges homeowners directly for "costs" associated with its collection services. Meanwhile, the HOA assumes no liability for Pro Solutions' fees.[2] This arrangement is allegedly conditioned on the HOA's promise to cease communicating with the homeowner and "cede control and oversight" of the account to Pro Solutions. (Compl. ¶ 3).

Prior to completing her treatment, Hanson attempted to catch up on her overdue HOA assessments. After attempting to pay her balance online and finding that she had apparently been "locked out" of her HOA payment account, Hanson called her HOA, which informed her that her debt had been assigned to Pro Solutions for collection. Upon returning home in April 2013, she found a letter from Pro Solutions dated March 19, 2013. The letter, titled "Notice of Intent to Lien," informed Hanson that she owed Pro Solutions $1,996.74 in delinquent assessments and outstanding fees. The letter itemized various additional costs levied by Pro Solutions, including "collection fees" of $300, "vesting costs" of $185, "management collection costs" of $275, "late charges" of $123.70, "interest" charges of $41.40, and "other costs" totaling $95. The letter stated that Hanson

---

[1] The factual background is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss.

[2] According to the complaint, the agreements between Pro Solutions and its HOA customers provide that a HOA will only be liable for Pro Solutions' fees "if the HOA agrees to reduce or waive Pro Solutions' claims to its fees on a homeowner account." (Compl. ¶ 24).

1  owed "regular assessments" in the amount of $977.

2  Later that month, Hanson received another letter from Pro Solutions titled "Notice to Offer
3  Payment Plan." This letter stated that Hanson's total outstanding debt had increased to $2,296.74.
4  Hanson then attempted to pay down a portion of her account by mailing her HOA two checks
5  totaling $848. The HOA forwarded the checks to Pro Solutions, which refused to accept payment.
6  In a letter sent May 8, 2013, Pro Solutions informed Hanson that it rejected her payment because
7  she failed to submit the full amount of her outstanding debt.

8  On June 12, 2013, a Pro Solutions representative informed Hanson via telephone that it
9  would foreclose on her home unless she paid the full balance of her delinquent account. Fearing
10 foreclosure, Hanson agreed to a payment plan, which required her immediately to submit $1,000.
11 Three days later, Hanson mailed Pro Solutions a check for $1,000, only $225 of which was then
12 applied to Hanson's outstanding HOA assessments. The remaining $745 was retained by Pro
13 Solutions as payment for its services.

14 On June 20, after processing her payment, Pro Solutions sent Hanson a letter stating that she
15 was required to pay her outstanding balance, which had risen to $2,592.06, by August 3, 2013.
16 Hanson claims that over the next two months, she "attempted to get a straight answer from her HOA
17 and Pro Solutions." (Compl. ¶ 7). During that time, Pro Solution's fees continued to accrue,
18 resulting in an outstanding account of $3,988.99 as of October 11, 2013, at which point Pro
19 Solutions recorded a lien on Hanson's home.

20                             III. LEGAL STANDARD

21 A complaint must contain "a short and plain statement of the claim showing that the pleader
22 is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a
23 complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its
24 face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544,
25 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to
26 draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This
27 standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The
28 determination is a context-specific task requiring the court "to draw on its judicial experience and

common sense." *Id*. at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

A. The Davis-Stirling Act

The bulk (if not the entirety) of Hanson's complaint hinges on her assertion that Pro Solutions' debt collection practices are constrained, albeit indirectly, by the Davis-Stirling Common Interest Development Act, a California statute governing ownership in common interest developments. *See* Cal. Civ. Code § 4000, *et seq*.[3] Among other things, the Davis-Stirling Act regulates a HOA's ability to collect debts owed by its members. Although Pro Solutions is not itself a HOA, Hanson avers Pro Solutions was acting as an agent for Vineyard Terrace, and thus that its rights against Hanson are no greater than the HOA's rights against her, which are in turn limited by the Davis-Stirling Act. In particular, Hanson contends Pro Solutions had no legal right to:

- Charge her excessive interest and late fees in violation of Civil Code §§

---

[3] The Davis-Stirling Act was amended on January 1, 2014. As a result, most provisions in the Act—including all sections discussed in this order—were assigned new locations in the California Civil Code. For the sake of consistency, this order refers to all provisions by their current citation. Similarly, quotations from prior court decisions have been altered to reflect the version of the code now in effect. Further filings, if any, should use current citations when referring to Davis-Stirling provisions.

5650(b)(2) and (3),

- Charge her for fees the HOA never incurred, in violation of §§ 5650(b)(1) and 5600(b),

- Threaten foreclosure when she owed less than $1,800, exclusive of penalties and fees, in violation of § 5720(b), and

- Refuse to accept anything less than a full payment on her debt in violation of § 5655(a).

Hanson does not, however, advance claims for relief under the Davis-Stirling Act. Instead, her complaint alleges that by attempting to collect debts to which it has no legal right, Pro Solutions undertakes business practices that violate 15 U.S.C. § 1692e (proscribing the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt"), 15 U.S.C § 1962f (prohibiting a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt"), and California's unfair competition law (forbidding "unlawful," "unfair," or "fraudulent" business acts or practices).[4]

Pro Solutions, invoking several decisions by the California Court of Appeal, asserts its actions as a third-party debt collector are in no way constrained by the Davis-Stirling Act. It first relies on *Brown v. Prof'l Cmty. Mgmt., Inc.,* 127 Cal. App. 4th 532 (Ct. App. 2005), wherein a homeowner filed a cross-complaint against a property management company hired by her HOA, alleging the company had charged fees prohibited by the Davis-Stirling Act. In particular, the

---

[4] To elucidate the broadly-worded prohibitions of 15 U.S.C. §§ 1692e and 1692f, the FDCPA provides a non-exhaustive list of examples of proscribed conduct. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). Invoking numerous examples set forth in the statute, Hanson avers Pro Solutions engaged in the following prohibited acts:

- Falsely representing the character, amount, or legal status of a debt in violation of § 1692e(2)(A),
- Falsely representing the services it rendered or compensation it could lawfully receive as debt collector in violation of § 1692e(2)(B),
- Threatening to take an action that cannot legally be taken or that is not intended to be taken in violation of § 1692e(5),
- Using a false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10),
- Collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) that is not permitted by law or expressly authorized by the agreement creating the debt in violation of § 1692f(1), and
- Taking or threatening to take a nonjudicial action to effect dispossession or disablement of Hanson's property where it has no present right to take possession and/or it has no present intention to take possession in violation of § 1692f(6)(A) and (B).

homeowner challenged the company's practice of levying fees for its preparation of "late letters" and "lien letters" when attempting to collect debts from delinquent homeowners. She claimed these charges violated § 5600(b), which prohibits "an association" from "impos[ing] or collect[ing] an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."[5] The court rejected the homeowner's claim, reasoning the Davis-Stirling Act does not preclude HOAs from hiring vendors that earn a profit by administering services on behalf of the HOA. Finding the Davis-Stirling Act contemplates that HOAs will be operated by a volunteer board of homeowners, the *Brown* court first emphasized the necessity of hiring for-profit vendors to fulfill some of the HOAs' responsibilities:

> Surely, the individual homeowners acting as volunteer officers and directors are not expected to perform all of the required services personally, and at no cost. Instead, the association must either hire employees or contract with others to provide the services. Landscape maintenance contractors are hired to mow the grass, painters are hired to paint the clubhouse, swimming pool contractors are hired to repair the pool deck, and managing agents, such as PCM, are hired to make these arrangements, and, importantly, to collect the fees and assessments levied against the homeowners. The costs incurred by the association, for which it levies an assessment or charges a fee, necessarily include the fees and profit the vendor charges for its services.

*Id.* at 538-39. The court explained that while § 5600(b) prohibits a HOA from "marking up" the incurred charge to generate a profit for itself, the statute imposes no such restriction on the vendor:

> Plaintiff would have it that no vendor selling its services to an association could charge a fee, or, indeed, continue in business as a profit-making enterprise. That cannot be the law.

*Id.* at 539. The court further noted that other provisions of the Davis-Stirling Act explicitly authorize HOAs to charge homeowners the very types of fees challenged by the homeowner in *Brown*. In particular, § 5650(b) provides that if a homeowner owes a delinquent assessment, the HOA is entitled to recover:

> (1) Reasonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees.
>
> (2) A late charge not exceeding 10 percent of the delinquent assessment or ten dollars ($10), whichever is greater . . . .

---

[5] The Act defines "association" as "a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." Cal. Civ. Code § 6528.

> (3) Interest on all sums imposed in accordance with this section, including the delinquent assessments, reasonable fees and costs of collection, and reasonable attorney's fees, at an annual interest rate not to exceed 12 percent . . . .

Cal. Civ. Code § 5650(b). In light of the Act's explicit authorization of reasonable debt collection fees, the court held that the third-party vendor's fees are not illegal "unless they exceed the association's costs, costs that necessarily include the fee charged for the service." *Id.* at 539. The court concluded:

> [T]he duty to refrain from the conduct prohibited by section [5600(b)] is imposed solely on the "association," the nonprofit entity designated by statute as having the responsibility to manage the affairs of the common interest development. Section [5600(b)] has no application to an association's vendors. Competitive forces, not the statute, will constrain the vendors' fees and charges.

*Id.*

A few years later, in *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (Ct. App. 2007), the Court of Appeal applied *Brown*'s logic to another provision of the Davis-Stirling Act, rejecting the plaintiff homeowners' attempt to hold a third-party vendor liable for charging certain fees relating to a home sale. In *Berryman*, the plaintiff trustees sold a home located in two HOAs managed by the defendant, a property management company.[6] The company charged the plaintiffs certain document and transfer fees in connection with the home sale. The plaintiffs sued, alleging the fees—which were retained by the defendant and not remitted to the HOAs—ran afoul of certain Davis-Stirling Act provisions. The plaintiffs argued that defendant, while not a non-profit "association" within the meaning of the statute, was prohibited by the Act from levying a charge greater than its actual cost to reproduce documents or transfer title records.[7] The court disagreed, reasoning that the statute explicitly allows a HOA to impose a transfer title fee "not to exceed the association's actual costs to change its records[.]" *See* Cal. Civ. Code § 4575. Invoking *Brown*, wherein the Court of Appeal held that "[t]he costs incurred by the association . . . necessarily

---

[6] Some homeowners belong to more than one HOA for a single home. *See Berryman*, 152 Cal. App. 4th at 1548.

[7] *See* Cal. Civ. Code § 4575 ("Except as provided in Section 4580, neither an association nor a community service organization or similar entity may impose or collect any assessment, penalty, or fee in connection with a transfer of title or any other interest except for the following: (a) An amount not to exceed the association's actual costs to change its records. (b) An amount authorized by Section 4530.").

1  include the fees and profit the vendor charges for its services," *see* 127 Cal. App. 4th at 539, the
2  court in *Berryman* held that the same logic applies to the Davis-Stirling provisions governing title
3  transfer and document fees:

> As the court noted in *Brown*, the statutory language prevents associations from charging inflated fees for documents and for transfer of title and using those fees for other purposes; it does not constrain the amount a managing agent may charge for these services.

152 Cal. App. 4th at 1552.  Accordingly, the court held that plaintiffs could not proceed with their Davis-Stirling claim against the property management company.

At first blush, *Brown* and *Berryman* might appear to indicate that the Davis-Stirling Act has no bearing on a third-party debt collector's ability to levy fees against homeowners.  Yet while the Act does not impose direct restrictions on vendors hired by HOAs, both *Brown* and *Berryman* demonstrate that a vendor's ability to collect fees flows in the first instance from the HOA's choice to incur certain costs relating to the vendor's services.  In both cases, the HOA hired a third-party vendor that, for a price, carried out certain tasks on behalf of the association.  In finding that the vendor's fees were not proscribed by the Davis-Stirling Act, the court in *Brown* noted that "[t]he costs *incurred by the association*, for which it levies an assessment or charges a fee, necessarily include the fees and profit the vendor charges for its service."  127 Cal. App. 4th at 539 (emphasis added).  The court emphasized that vendor fees are permissible to the extent they are commensurate with the HOA's actual costs:

> The fees are not "illegal" *unless they exceed the association's costs*, costs that necessarily include the fee charged for the service.  And section [5650(b)] contemplates that the association will incur reasonable costs in connection with its collection efforts.

*Id.* (emphasis added).  Likewise in *Berryman*, the court affirmed *Brown*'s holding that the Davis-Stirling Act does not limit a third-party vendor's ability to charge homeowners for costs *incurred by* the HOA.  *See* 152 Cal. App. 4th at 1552 ("As in *Brown*, an association's 'costs' for purposes of the statute include 'the fees and profit the vendor *charges* for its services.'") (emphasis added); *see also Brown*, 127 Cal. App. 4th at 539 (rejecting plaintiff's argument that "no vendor *selling* its services to an association could charge a fee, or, indeed, continue in business as a profit-making enterprise")

(emphasis added).

Here, unlike in *Brown* and *Berryman*, the HOA incurs no costs by hiring Pro Solutions to collect from delinquent homeowners like Hanson. Indeed, Pro Solutions offers its collection services free of charge. Accordingly, because the HOA incurs no cost, neither *Brown* nor *Berryman* resolve the novel question posed by Hanson's complaint: can a third-party vendor, collecting from delinquent homeowners on behalf of a HOA, directly charge a homeowner fees *never* incurred by the HOA?[8]

In *In re Cisneros*, 2012 WL 4627833 (Bankr. N.D. Cal. 2012), the court addressed this same question, albeit in a different procedural posture.[9] In *Cisneros*, a homeowner filed for bankruptcy after falling behind on assessments owed to his HOA. The HOA contracted with Pro Solutions to recover the debtor's delinquent payments.[10] Pro Solutions, acting on behalf of the HOA, filed two claims in the bankruptcy court to recover unpaid HOA dues and collection fees. The debtor objected. While conceding that he owed the unpaid HOA dues plus expenses "actually paid" by the HOA, the debtor disputed the validity of the additional collection fees imposed by Pro Solutions. *Id.* at *1. The court sustained the objection, reasoning that the debtor was not liable to Pro Solutions "in any way." *Id.* at *2. After acknowledging Pro Solution's argument that the Davis-Stirling Act only applies to HOAs, the court emphasized that Pro Solutions' rights nonetheless cannot exceed those of the HOA:

---

[8] Pro Solutions incorrectly contends that the Court of Appeal addressed this same issue in *Fowler v. M & C Ass'n Mgmt. Servs., Inc.*, 220 Cal. App. 4th 1152 (2013). In *Fowler*, the third-party vendor imposed fees directly on the homeowner instead of billing the HOA for its services and having the HOA assess the buyer for the cost. Yet, as was apparently the case in *Brown* and *Berryman*, the vendor in *Fowler* entered into an agreement whereby the HOA was ultimately responsible for the vendor's fees. Accordingly, like in *Brown* and *Berryman*, the fees imposed by the vendor constituted "actual costs" to the HOA. *Id.* at 1158. The court found that it "makes no difference" whether the vendor billed the HOA or the homeowner directly, reasoning that "[i]n either event, the fees are charged by M&C for the cost of its services and include *no override for the benefit of the HOA*." *Id.* at 1157-58. (emphasis added). Here, by contrast, Pro Solutions rendered its services at no cost to the HOA.

[9] While the opinion of the Bankruptcy Court is not binding upon this order's interpretation of California law, its reasoning in *Cisneros* is persuasive.

[10] The contract provided that the delinquent homeowners, and not the HOA, would pay all fees and costs incurred by Pro Solutions. It further assured that in the event Pro Solutions was unable to collect the fees or costs, the HOA would nonetheless bear no responsibility.

> Pro Solutions seems to forget that it has no independent rights against Cisneros. It is not in privity with Cisneros. Any rights it has against Cisneros stem from the HOA, so it cannot have more rights than the HOA has against Cisneros.

*Id.* The court disallowed Pro Solutions' claims for unpaid collection fees, concluding the alleged debts were not allowable under state law:

> It is clear that the fees of Pro Solutions are not allowable claims of the HOA under [§ 5650(b)] because they were not costs *incurred by the HOA* in collecting the delinquent assessment. They are also not allowable under [§ 5600(b)] because they exceed the amount necessary to defray the HOA's costs; they are not costs *of the HOA* at all. To find otherwise opens the door to all sorts of mischief, as an HOA has no incentive whatsoever to question costs for which it is not liable and no incentive to search for services charging more reasonable costs.

*Id.* (emphasis in original).

Although no California appellate court has directly addressed whether, as here, a third-party vendor acting on behalf of a HOA can lawfully charge a delinquent homeowner fees *not* incurred by the HOA, the aforementioned authorities prompt a conclusion that Pro Solutions' right to impose debt collection fees against Hanson extends no further than the Vineyard Terrace HOA's right to do the same. Unlike the vendor fees challenged in *Brown*, *Berryman*, and *Fowler*, Pro Solutions' fees apparently are neither incurred nor paid by the HOAs that contract for the company's "no cost" services. If California law nonetheless entitled Pro Solutions to impose the fees of its choosing against homeowners like Hanson, the company would wield unchecked power to extract a cascade of fees and costs from a HOA's delinquent members.

B.  Clarity of the Complaint

While Hanson persuasively argues that the Davis-Stirling Act may, in theory, constrain Pro Solutions' ability to collect homeowner debt, it is difficult to ascertain which specific aspects of defendant's actions are being targeted by Hanson's complaint. In particular, it is unclear which allegations depend on the "no cost" aspect of Pro Solutions' business practices. As described above, California law indicates that that the distinction between "no cost" and "cost incurred" debt collection models is consequential to a third-party vendor's right to profit from collecting homeowner debt. At oral argument, however, Hanson claimed that even if Pro Solutions *did* charge HOAs for its collection fees, its actions would nonetheless violate the FDCPA (and, presumably, the

California UCL).[11] Although Hanson's complaint points to numerous aspects of Pro Solutions' business practices that allegedly run afoul of federal and state law, it is unclear which allegations hinge on the averment that Pro Solutions operates on a "no cost" basis. For example, in averring that Pro Solutions "overcharges" homeowners for interest and late fees on delinquent accounts, does Hanson contend that the Davis-Stirling Act would restrict even a "for cost" collector from levying fees of the sort described in her complaint? (Compl. ¶ 31). Similarly, by claiming that Pro Solutions "exacerbates" homeowners' injuries by refusing to accept partial payments, levying additional fees upon refusal, and using payments to defray vendor costs prior to satisfying the overdue assessment in full, is it her position that these acts are unlawful regardless of Pro Solutions' "no cost" practices? To the extent Hanson contends that Pro Solutions' acts would be impermissible even under a "cost incurred" model of the sort seen in *Brown* or *Berryman*, her underlying legal theory is difficult to discern.

Because the complaint is insufficiently clear as to the distinct bases for Pro Solutions' alleged liability under the FDCPA and the California UCL (vis-à-vis the constraints imposed on the HOA by the Davis-Stirling Act), it fails to put Pro Solutions on notice of the claims against it. *See* Fed. R. Civ. P. 8. Accordingly, Pro Solutions' motion to dismiss is granted in part with leave to amend. If Hanson maintains that Pro Solutions' conduct violates the law regardless of whether the HOA incurs the vendor's costs, she can attempt to enunciate each distinct theory of liability more clearly in her amended complaint.

## V. CONCLUSION

For the aforementioned reasons, Pro Solutions' motion to dismiss is GRANTED IN PART with leave to amend. If Hanson wishes to lodge an amended complaint, she must do so within thirty days.

IT IS SO ORDERED.

Dated: 2/19/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[11] Similarly, the proposed class definition apparently indicates that only some of Hanson's claims are predicated upon Pro Solutions' "no cost" collection practices. (Compl. ¶ 51).

No. CV 13-05377 RS
ORDER

11