IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENA HANSON, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>JQD, LLC, d/b/a PRO SOLUTIONS, a California corporation,<br><br>   Defendant.<br>_____/ | No. 13-05377 RS<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS** |

## I. INTRODUCTION

In this second motion to dismiss, defendant JQD, LLC (doing business as "Pro Solutions") argues plaintiff Gena Hanson has failed to state a cognizable claim for relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Hanson's initial class action complaint was dismissed with leave to amend to allow plaintiff the opportunity to delineate her theories of recovery more clearly.  In her first amended complaint (FAC), plaintiff alleges that six of Pro Solutions' debt collection practices are unlawful.  Because each challenged business practice gives rise to claims for relief under both the FDCPA and the UCL, defendant's motion is denied in full.

## II. BACKGROUND[1]

The relevant factual background was described in the prior order on defendant's first motion to dismiss and will not be repeated here in full. (ECF No. 18). In short, condominium owner Gena Hanson claims to be a victim of allegedly unlawful debt collection practices undertaken by Pro Solutions, a debt collection company hired by her local homeowners association ("HOA"). Hanson, a member of the Vineyard Terrace Homeowners Association, fell behind on her monthly membership assessments in early 2013. The HOA turned Hanson's delinquent account over to Pro Solutions, which proceeded to levy numerous fees against Hanson in connection with its attempt to collect her debt. After a few months, the fees charged by Pro Solutions exceeded the balance of Hanson's overdue assessments. When Hanson attempted to remit a portion of her balance, Pro Solutions refused to accept her payment, instead informing Hanson that she was required to submit the full amount owed or enter into a "payment plan." Hanson chose the latter option, but was unable to comply with the payment schedule set by Pro Solutions. When Hanson submitted a $1,000 payment in June 2013, defendant applied $255 to her assessment debt and used the remaining $745 to pay a portion of the various fees and charges imposed by Pro Solutions. Eventually, after Hanson's debt ballooned to nearly $4,000 in October 2013, Pro Solutions recorded a lien on her home.

Hanson filed this putative class action in November 2013, alleging Pro Solutions' business practices violate federal and California law. In particular, she argues that defendant's debt collection practices are constrained, albeit indirectly, by the Davis-Stirling Common Interest Development Act, a California statute governing ownership in common interest developments. *See* Cal. Civ. Code § 4000, *et seq.*[2] Among other things, the Davis-Stirling Act regulates an HOA's ability to collect debts owed by its members. Although Pro Solutions is not itself an HOA, Hanson avers Pro Solutions was acting as an agent for Vineyard Terrace, and thus that its rights against

---

[1] The factual background is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss.

[2] The Davis-Stirling Act was amended on January 1, 2014. As a result, most provisions in the Act—including all sections discussed in this order—were assigned new locations in the California Civil Code. For the sake of consistency, this order refers to all provisions by their current citation.

Hanson are no greater than the HOA's rights against her, which are in turn limited by the Davis-Stirling Act.  In particular, Hanson contends Pro Solutions had no legal right to:

- Charge her for fees the HOA never incurred, in violation of §§ 5650(b)(1) and 5600(b),
- Charge her interest and late fees exceeding the amounts allowable under Civil Code §§ 5650(b)(2) and (3),
- Threaten foreclosure when she owed less than $1,800, exclusive of penalties and fees, in violation of § 5720(b), and
- Refuse to accept anything less than a full payment on her debt in violation of § 5655(a).

Hanson does not, however, advance claims for relief under the Davis-Stirling Act.  Instead, she alleges that by attempting to collect debts to which it has no legal right, Pro Solutions undertakes business practices that violate 15 U.S.C. § 1692e (proscribing the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt"), 15 U.S.C § 1962f  (prohibiting a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt"), and California's unfair competition law (forbidding "unlawful," "unfair," or "fraudulent" business acts or practices).

Pro Solutions moved to dismiss the first class action complaint, arguing the company's actions as a third-party debt collector are in no way constrained by the Davis-Stirling Act.  (ECF. No 12).  Defendant's motion was granted in part, *see Hanson v. JQD, LLC*, 13-05377 RS, 2014 WL 644469 (N.D. Cal. Feb. 19, 2014) (ECF No. 19), but the order rejected Pro Solutions' contention that the Act was irrelevant to defendant's debt collection practices.  According to the complaint, Pro Solutions offers debt collection services free of charge to its HOA clients.  The company then obtains effective control of delinquent HOA member accounts and charges homeowners directly for numerous "costs" associated with its services.  All the while, the HOA assumes no liability for the company's fees.[3]  Although the California Court of Appeal has held on various occasions that an agent can profit by administering services on behalf of an HOA and charging a fee that is passed on

---

[3] According to the complaint, the agreements between Pro Solutions and its HOA customers provide that an HOA will only be liable for Pro Solutions' fees "if the HOA agrees to reduce or waive Pro Solutions' claims to its fees on a homeowner account."  (FAC ¶ 27). This arrangement is allegedly conditioned on the HOA's promise to cease communicating with the homeowner and "cede control and oversight" of the account to Pro Solutions.  (Compl. ¶ 3).

to the member, *see, e.g., Brown v. Prof'l Cmty. Mgmt., Inc.*, 127 Cal. App. 4th 532, 539 (2005), Hanson's initial complaint raised a novel question not yet answered by the California courts: can a third-party vendor, collecting from delinquent homeowners on behalf of an HOA, directly charge a homeowner fees *never* incurred by the HOA, and for which the HOA would never be liable? Based on the "no cost" business model described in the complaint, the prior order concluded that Pro Solution's challenged fees could be unlawful because they exceeded the costs incurred by the HOA. *See* Cal. Civ. Code § 5650(b)(1); *Brown*, 127 Cal. App. 4th at 539 (third-party vendor's fees "not 'illegal' unless they exceed the association's costs, costs that necessarily include the fee charged for the service").

Although the prior order concluded that some of defendant's alleged conduct could be deemed unlawful, the complaint was dismissed in part with leave to amend because it failed to put Pro Solutions on notice of all the claims against it. At oral argument, Hanson argued that various of Pro Solutions' practices would be unlawful even if the company operated according to a "cost incurred" business model of the sort seen in cases like *Brown* and *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (Ct. App. 2007). The prior order held that the initial complaint failed to specify which of plaintiff's allegations were untethered from defendant's "no cost" business practices:

> For example, in averring that Pro Solutions "overcharges" homeowners for interest and late fees on delinquent accounts, does Hanson contend that the Davis-Stirling Act would restrict even a "for cost" collector from levying fees of the sort described in her complaint? (Compl. ¶ 31). Similarly, by claiming that Pro Solutions "exacerbates" homeowners' injuries by refusing to accept partial payments, levying additional fees upon refusal, and using payments to defray vendor costs prior to satisfying the overdue assessment in full, is it her position that these acts are unlawful regardless of Pro Solutions' "no cost" practices? To the extent Hanson contends that Pro Solutions' acts would be impermissible even under a "cost incurred" model of the sort seen in *Brown* and *Berryman*, her underlying legal theory is difficult to discern.

*Hanson*, 2014 WL 644469 at *6. Defendant's motion was accordingly granted in part with leave to amend. Hanson then lodged the FAC with defendant's second motion to dismiss following shortly thereafter.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

### IV. DISCUSSION

The FAC challenges six of Pro Solutions' business practices, alleging the company's actions violate the FDCPA and California's unfair competition law.

*a.  Fair Debt Collection Practices Act*

The first challenged practice—defendant's seeking certain collection "fees" from homeowners that were never incurred by their homeowners associations—was discussed at length in

the order on defendant's first motion to dismiss. Like the initial complaint, the FAC alleges Pro Solutions attempted to extract from Hanson certain "fees" that were never incurred by Vineyard Terrace. For example, in its initial collection letter dated March 19, 2013, defendant informed Hanson that she owed $855.70 for a "collection fee," "vesting costs," "mgmt. collection costs," and "other costs." (FAC ¶ 41). As explained in the prior order, California courts would likely find such charges to be unlawful, meaning Pro Solutions had no right to attempt to collect these fees from Hanson. *See* 2014 WL 644469 at *6. Accordingly, with respect to the first challenged business practice, the FAC states a claim for relief under the FDCPA.[4]

Hanson next contends that defendant charges late fees and interest rates that are prohibited by Cal. Civ. Code § 5650(b), which provides in pertinent part:

> If an assessment is delinquent, the association may recover all of the following:
>
> > (1) Reasonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees.
> >
> > (2) A late charge not exceeding 10 percent of the delinquent assessment or ten dollars ($10), whichever is greater, unless the declaration specifies a late charge in a smaller amount, in which case any late charge imposed shall not exceed the amount specified in the declaration.
> >
> > (3) Interest on all sums imposed in accordance with this section, including the delinquent assessments, reasonable fees and costs of collection, and reasonable attorney's fees, at an annual interest rate not to exceed 12 percent[.]

Cal. Civ. Code § 5650(b). Hanson argues that because Pro Solutions is acting as the HOA's agent, its ability to charge interest and late fees is no greater than the HOA's right to do the same. She therefore contends that defendant had no right to impose a late charge exceeding the greater of $10 or 10% of the delinquent assessment (§ 5650(b)(2)) or charge interest exceeding an annual rate of 12% (§ 5650(b)(3)).

To be sure, Pro Solutions is not an "association" within the meaning of § 5650(b), but that

---

[4] More specifically, the alleged conduct runs afoul of § 1692e(2)(A) (prohibiting false representation of the nature, character, or status of a debt), § 1692e(2)(B) (false representation of compensation a debt collector can lawfully receive), § 1692e(5) (threatening to take an action that cannot legally be taken or was not intended to be taken), § 1692e(10) (using false representations or deceptive means to attempt to collect a debt), and § 1692f(1) (collecting any amount not expressly authorized by the agreement creating the debt and/or not permitted by law).

1  does not render the Davis-Stirling Act irrelevant to its business practices.  As explained in the prior
2  order, because defendant is acting as Vineyard Terrace's agent, and because defendant has no
3  independent contractual or statutory rights against Hanson, "Pro Solutions' right to impose debt
4  collection fees against Hanson extends no further than the Vineyard Terrace HOA's right to do the
5  same." 2014 WL 644469 at *6.  A principal "may not employ an agent to do that which the
6  principal cannot do personally." *Channel Lumber Co., Inc. v. Porter Simon*, 78 Cal. App. 4th 1222,
7  1228 (2000).  It follows, then, that debt collectors hired on behalf of HOAs cannot impose late fees
8  or collection fees in excess of those allowed by § 5650(b)(2) and (3).

9        This conclusion is consistent with the various California appellate decisions addressing
10 third-party vendors' rights to assess certain fees and charges to HOA members.  Although the Court
11 of Appeal has not addressed whether § 5650(b)(2) and (3) have any bearing on the fees charged by
12 an association's agent, *Brown* and its progeny indicate that the agent of an HOA has no right to
13 impose interest rates and late fees exceeding the amounts proscribed by the statute.  *Brown* teaches
14 that while a for-profit vendor acting on behalf of an HOA can impose "mark-ups" on the actual
15 costs of debt collection, such profits are permissible only to the extent they flow from costs *incurred*
16 by the HOA.  The court in *Brown* rejected the cross-complainant's Davis-Stirling claim against a
17 third-party debt collector, emphasizing that § 5650(b)(1) "authorizes an association to charge
18 homeowners the very type of fees" challenged in the cross-complaint.  127 Cal. App. 4th at 539.
19 The vendor in *Brown* had levied various charges for preparing "late letters" and "lien letters" in the
20 process of collecting delinquent HOA member debt.  The court deemed these fees permissible,
21 reasoning they were "reasonable costs incurred" by the association.  *Id.* (alterations omitted).  *See*
22 *also* § 5650(b)(1) (authorizing association to recover "[r]easonable costs incurred in collecting the
23 delinquent assessment").

24       Hanson alleges that in addition to various flat fees related to debt collection, Pro Solutions
25 charges more than 10% in late fees on her overdue HOA assessments.  She further avers that
26 defendant imposes an interest rate exceeding 12%.  Under a "cost incurred" business model of the
27 sort seen in *Brown*, these interest rates and late fees might be permissible if incurred *by the*
28 *association*.  If the HOA were on the hook for these charges, the amounts might conceivably be

construed as "[r]easonable costs incurred in collecting the delinquent assessment."[5] *See* § 5650(b)(1). In this case, however, Vineyard Terrace allegedly incurs no costs at all, leaving its agent Pro Solutions with no apparent basis for exacting interest rates and late charges prohibited to the HOA itself.

Defendant, insisting the Davis-Stirling Act has zero bearing on its rights against Hanson and the putative class members, reads the relevant case law too broadly. To be sure, the Court of Appeal was clear in *Brown* that § 5600(b), which prohibits an association from "impos[ing] or collect[ing] an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied," has "no application to an association's vendors." 127 Cal. App. 4th at 539. Because the prohibition in § 5600(b) unambiguously applies to non-profit "association[s]," the court concluded that homeowners cannot assert claims under the statute against a for-profit agent hired by the HOA.[6] *Id.* at 538. This does not mean, however, that the statute's homeowner protections dissolve as soon as the HOA delegates its debt collection responsibilities to a third party. Vineyard Terrace may not employ Pro Solutions as its agent "to do that which the principal cannot do personally." *see Channel Lumber Co.*, 78 Cal. App. 4th at 1228. If, as Pro Solutions contends, the Act's HOA prohibitions are of no significance to the actions of third-party vendors, the court in *Brown* would not have described a scenario where a vendor's fees could be deemed "illegal" under § 5600(b):

> The [debt collection] fees [charged by the vendor] are not "illegal" unless they exceed the association's costs, costs that necessarily include the fee charged for the service.

127 Cal. App. 4th 532 at 539. *Brown* indicates that an agent's fees can still be illegal under § 5600, even though that provision's text only addresses "association[s]."

In enacting the Davis-Stirling Act, the California Legislature intended to protect

---

[5] Hanson disputes this possibility, arguing no circumstances permit an HOA's agent to charge interest or late fees exceeding the thresholds provided in § 5650(b)(2) and (3). Because the FAC's averments indicate that Vineyard Terrace incurred no costs in hiring Pro Solutions, this order need not reach the issue.

[6] The court in *Berryman* came to the same conclusion regarding § 4575, which governs an association's ability to assess fees, assessments, or penalties in connection with title transfers. *See* 152 Cal. App. 4th at 1552. Like § 5650(b)(1), the provisions addressing transfer fees explicitly authorize an association to charge reasonable fees tethered to its actual collection costs. *See* §§ 4575; 4530.

homeowners from losing their homes simply for falling behind on small sums of delinquent HOA assessments. *See Huntington Con'l Town House Assn., Inc. v. Miner*, 222 Cal. App. 4th Supp. 13, 17 (Cal. App. Dep't Super. Ct. 2014) (discussing legislative history of § 5720). The Act's protections would be undermined if an HOA's agent was free to impose interest rates and late charges otherwise prohibited to the association. Here, the complaint alleges that Pro Solutions attempted to collect late fees and interest fees in excess of the amounts allowed by the statute. Accordingly, as to the second and third challenged business practices, Hanson states a viable claim for relief under the FDCPA.[7]

The same logic applies to the remainder of Pro Solutions' business practices: threatening foreclosure when homeowners' delinquent assessments were less than $1,800 and less than twelve months overdue; declining to accept homeowners' partial payments; and failing to apply payments first to homeowners' delinquent assessments. If the Davis-Stirling Act prohibits an HOA from engaging in a particular debt collection practice, the association cannot circumvent the act's protections simply by employing Pro Solutions as its agent. Section 5720(b) provides an HOA may not collect a delinquent assessment through judicial or nonjudicial foreclose unless (1) the account is more than 12 months delinquent or (2) the assessments owed, "not including any accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest," exceed $1,800. According to the complaint, Pro Solutions attempted to foreclose on Hanson's property before her account reached either of these thresholds.[8] Accordingly, the fourth challenged business practice is actionable under the FDCPA.[9]

---

[7] In particular, the alleged conduct is prohibited under § 1692e(2)(A), § 1692e(10), and § 1292f(1).

[8] Pro Solutions argues that plaintiff's factual averments are contradicted by an exhibit attached to the FAC. Hanson's pleadings contain an April 2013 letter in which Pro Solutions explains that it is not allowed to foreclose on her home until her delinquent assessments reach the thresholds provided in § 5720(b). (FAC Exhibit B). "Defendant clearly did not threaten forecloseure in Attachment B," Pro Solutions argues, "rather defendant set forth the applicable law." (Def. Mot., ECF No. 25, 8:15-16) (emphasis in original). The FAC also avers, however, that a Pro Solutions representative threatened Hanson with foreclosure during a June 2013 phone call. (FAC ¶ 46). According to Hanson, her delinquent assessments were still below $1,800 at that time. *Id.* When considering a motion to dismiss, a court accepts all factual averments as true and construes the pleadings in a light most favorable to the plaintiff. These allegations are sufficient to support Hanson's claim that Pro Solutions threatened to foreclose on her home before it was legally entitled to do so.

[9] This conduct triggers violations of § 1692e(5), § 1692e(10), and § 1692f(6) (threatening to take nonjudicial action to effect disposition of property where there is no present right or intent to do so).

No. CV 13-05377 RS
ORDER
9

The Davis-Stirling Act further provides that "[a]ny payments" made by the homeowner on a debt described in § 5650(a) "shall first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest."[10] Cal. Civ. Code § 5655(a). Hanson contends this provision imposes two separate restrictions on HOAs and their agents. First, as is evident from the statutory text, a homeowner's payments cannot be diverted to collection costs or other fees before the delinquent assessment is satisfied in full.[11] The FAC avers Pro Solutions applied portions of Hanson's payments to its own fees before her delinquent assessments had been satisfied. By so doing, Hanson avers, defendant "artificially raised the principal debt balance above the statutory minimum for foreclosure." (FAC ¶ 75). Accordingly, Hanson states a claim for relief under the FDCPA.

Second, Hanson argues that § 5655(a) precludes HOAs and their agents from refusing a homeowner's partial payments. According to plaintiff, the statute speaks directly and unambiguously on the matter, providing that "[*a*]*ny* payments made by the owner . . . *shall* . . . be applied to the assessments owed . . . ." *Id.* (emphasis added). This language, Hanson argues, plainly requires HOAs to accept and apply "any" payment proffered by a delinquent homeowner. Pro Solutions rejects this view, contending that Hanson's interpretation is belied by the 2011 failure of a California Assembly bill that sought to require HOAs to accept partial payments. If § 5655(a) already required an HOA to accept partial payments, defendant argues, there would have been no reason to amend the statute. That view is unavailing for several reasons. As an initial matter, little can be gleaned about the meaning of a statute from a subsequent failed attempt at amendment. Moreover, a recent decision from the Appellate Division of the Orange County Superior Court supports Hanson's interpretation of the statute. In *Huntington Cont'l Town House Assn., Inc. v.*

---

[10] Section 5650(a), in turn, provides, "A regular or special assessment and any late charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any, as determined in accordance with subdivision (b), shall be a debt of the owner of the separate interest at the time the assessment or other sums are levied."

[11] Defendant argues this restriction applies only to HOAs, but nothing in the text of § 5655(a) or § 5650(a) supports this view. Moreover, as addressed above in the discussion of § 5650(b), it is unavailing for defendant to argue generally that the Act's HOA regulations have no bearing on the acts of an HOA's agent.

*Miner*, 222 Cal. App. 4th Supp. 13, 17 (Cal. App. Dep't Super. Ct. 2014), the panel concluded that an HOA is required under § 5655(a) to accept a homeowner's partial payments. "There would be no need [for the statute] to explain how payments are to be applied to the various charges," the court reasoned, "if the Legislature contemplated only full payments." *Id.* The court concluded that the statute's "plain language . . . contemplates partial payments of amounts owed." *Id.*

Defendant makes no attempt to acknowledge *Miner* or explain why the Court of Appeal would decide the matter differently.[12] Rather, the statute's plain language and the court's decision in *Miner* both indicate that the Court of Appeal would conclude an HOA and its agents are required to accept a homeowner's partial payments. Moreover, although the language of § 5655(a) is unambiguous, its legislative history indicates that the provision's purpose "was to protect the interest of a homeowner who has failed to timely pay an assessment levied by a homeowners' association." *Diamond v. Superior Court*, 217 Cal. App. 4th 1172, 1190-91 (2013). The *Miner* panel's reading of the statute effectuates this purpose. *See also id. at* 1188 ("Even where the plain language of the statute dictates the result, the legislative history may provide additional authority confirming the court's interpretation of the statute."). By averring that Pro Solutions told her she was required to make full payments, and that it would refuse to accept a partial payment unless she entered into a payment plan, Hanson states a claim for relief under the FDCPA.

In defendant's view, its collection rights are defined not by the Davis-Stirling Act, but by the covenants, conditions, and restrictions ("CC&Rs") flowing from Hanson's home purchase. Indeed, the FAC avers generally that an HOA's relationship to a homeowner is "based in contract" under the CC&Rs that are "incidental to the purchase of a home within a Common Interest Development." (FAC ¶ 21). This does not mean, however, that plaintiff only has a FDCPA claim against Pro Solutions to the extent she can allege that defendant violated certain terms of the relevant CC&Rs. As explained above, the FAC avers Pro Solutions exceeded the bounds of its agency and attempted to recover debts that it had no right to collect. Accordingly, Hanson meets her burden of showing

---

[12] As a decision rendered by the Appellate Division of the Orange County Superior Court, *Miner* is binding only on lower courts in that county. The panel's decision has since been appealed, but the Court of Appeal has not yet issued a decision.

that defendant's actions were unlawful under the FDCPA.  *See Berryman*, 152 Cal. App. 4th at 1555 (burden is on plaintiff to show the vendor was *not* permitted to levy the challenged fees).  Indeed, Hanson's pleadings, accepted as true, indicate that each of defendant's six challenged business practices violates the FDCPA.

### b. California's Unfair Competition Law

California's unfair competition law ("UCL") prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. Prof. Code § 17200.  Accordingly, "an act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent."  *Berryman*, 52 Cal. App. 4th at 1554 (2007).  A court may determine a practice is "unfair or deceptive" under the UCL "even if it is not unlawful."  *Cal-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Here, the FAC alleges Pro Solutions violated all three prongs of the statute.  For purposes of resolving this motion, it is sufficient to conclude that Hanson states a claim under the "unlawful" prong.  Because each of the six challenged business practices are actionable under the FDCPA, they are similarly actionable as "unlawful" conduct under the UCL.

### c. Dey v. Continental Central Credit

A relevant case not raised in the parties' briefs on this motion is worthy of note.[13]  In *Dey v. Cont'l Cent. Credit*, 170 Cal. App. 4th 721, (2008), the Court of Appeal rejected a timeshare interest-holder's claim challenging a 40% collection fee imposed by a vendor hired to collect delinquent HOA assessments.  There were two defendants in *Dey*: Vacation Resorts International (the HOA's managing agent) and Continental Central Credit (a debt collector hired by the agent to collect overdue assessments).  Apparently in *Dey*, unlike in *Brown*, *Berryman*, and *Fowler v. M&C Assn. Management Services, Inc.*, 220 Cal. App. 4th 1152 (2013), the HOA incurred no costs pertaining to debt collection:

> Vacation Resorts and Continental had an agreement under which Continental would not charge Vacation Resorts or the Association any collection fees, but it would

---

[13] In reply to its first motion to dismiss the initial class action complaint, (ECF No. 12, p. 4) defendant mentions *Dey* in passing, but only because the case was cited in *In re Cisneros*, 2012 WL 4627833 (Bankr. N.D. Cal. 2012), a bankruptcy court order finding that Pro Solutions had no right under California law to impose debt collection fees.

> instead collect additional fees from homeowners and share the fees with Vacation Resorts[.]

170 Cal. App. 4th at 724.  The plaintiff raised a single claim under the UCL, predicated on an alleged violation of 15 U.S.C. § 169f(1) (prohibiting the collection of any amount that is not "expressly authorized by the agreement creating the debt or permitted by law").  Unlike Hanson, the plaintiff in *Dey* did not argue that the Davis-Stirling Act had any bearing on the defendants' conduct.  He thus failed to show that the collection practice was not "permitted by law."  Similarly, the plaintiff did not allege that the defendants attempted to collect any debt not authorized by the underlying contract.  Reasoning that *Brown* and *Berryman* "set forth California law on the fees vendors may charge homeowner associations," the court concluded that plaintiff failed to meet his burden of showing that the challenged fee was prohibited by statute or contract.  *Id.* at 248-49.

A federal court should defer to the California Court of Appeal's interpretation of a California statute "unless there is convincing evidence that the California Supreme Court would decide the matter differently."  *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003).  Had the plaintiff in *Dey* invoked the Davis-Stirling Act to argue that a for-profit debt collector's fees are lawful only when *incurred* by the HOA, it is likely the court would have reached a different result.  Hanson, unlike the plaintiff in *Dey*, satisfies her burden of *showing* that the vendor's fees are unlawful.  *See Berryman*, 152 Cal. App. 4th at 1555.

## V. CONCLUSION

For the aforementioned reasons, Pro Solutions' motion to dismiss is denied.

IT IS SO ORDERED.

Dated: 7/11/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE