JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
EMANUEL B. TOWNSEND (SBN 305373)
etownsend@cpmlegal.com
ADAM M. SHAPIRO (SBN 267429)
ashapiro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

NOAH ZINNER (SBN 247581)
nzinner@heraca.org
GINA DI GIUSTO
gdigiusto@heraca.org (SBN 293252)
**HOUSING AND ECONOMIC RIGHTS ADVOCATES**
1814 Franklin Street, Suite 1040
Oakland, California 94612
Telephone: (510) 271-8443
Facsimile: (510) 280-2548

*Attorneys for Plaintiff Gena Hanson, Individually*
*and on Behalf of All Others Similarly Situated*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GENA HANSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JQD, LLC, d/b/a PRO SOLUTIONS**, a California corporation;<br><br>Defendant. | CASE NO. Case No. 4:13-cv-05377-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   April 27, 2017<br>Time:   1:30 pm<br>Judge:  The Honorable Richard Seeborg<br>Room: Courtroom 3, 17th Floor |

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT; CASE NO. Case No. 4:13-cv-05377-RS**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 2

II.  RELEVANT PROCEDURAL HISTORY ............................................................. 3

    A.   The Pleadings ............................................................................................ 3

    B.   Discovery .................................................................................................. 5

    C.   Mediation .................................................................................................. 5

III.  SUMMARY OF SETTLEMENT ......................................................................... 6

    A.   The Class .................................................................................................. 6

    B.   Injunctive Relief ....................................................................................... 6

    C.   Monetary Relief ........................................................................................ 7

    D.   Cy Pres ...................................................................................................... 8

    E.   The Release ............................................................................................... 8

    F.   Class Notice .............................................................................................. 9

    G.   No Class Members Object, Only Five Opt Out, and 842 Submit Payable Claims ........ 10

IV.  THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL ....................... 11

    A.   Legal Standard ......................................................................................... 11

    B.   The Settlement Is Demonstrably Fair, Reasonable and Adequate ................................ 11

        1.   The Settlement was the Result of Arms' Length Negotiations ............................... 12

        2.   The Amount and Nature of the Settlement Favor Final Approval ......................... 12

        3.   The Risk, Expense, Complexity and Likely Duration of Further Litigation Favor Final Approval ............................................................................... 13

        4.   Plaintiff Conducted Significant Discovery Prior to the Settlement and were Assisted in Evaluating and Agreeing on Settlement Terms by an Experienced Mediator .... 14

        5.   Class Counsel's View on the Settlement Based Upon Their Experience Prosecuting Trust Class Actions Favors Final Approval ................................ 15

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT; CASE NO. Case No. 4:13-cv-05377-RS**

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.   Class Members' Positive Reaction to the Settlement Favors Final Approval ........16

C.   The Notice Procedures Carried Out Satisfy Due Process Requirements...................... 17

V.   CONCLUSION ................................................................................................. 18

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLMENT;** CASE NO. Case No. 4:13-cv-05377-RS                                   ii

1

## TABLE OF AUTHORITES

2

**Page(s)**

3
Cases
*Alberto v. GMRJ Inc.,*

4
   252 F.R.D. 652 (E.D.Cal. 2008) ................................................................. 11

5
*Boyd v. Bechtel Corp.,*
   485 F.Supp. 610 (N.D.Cal. 1979) ............................................................. 15

6
*Churchill Villages, LLC v. General Electric,*

7
   361 F.3d 566, 575-76 (9th Cir. 2004) .................................................. 16, 17

8
*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ................................................................... 11

9
*Create-A-Card, Inc. v. INTUIT, Inc.,*

10
   U.S. Dist. LEXIS 93989 (2009) ................................................................ 14

11
*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ........................................................................ 12

12
*Dunleavy v. Nadler,*

13
   213 F.3d 454 (9th Cir. 2000) ..................................................................... 11

14
*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D.Cal. 1980) ................................................................... 15

15
*Hanlon v. Chrysler Corp.,*

16
   150 F.3d 1011 (9th Cir. Cal. 1998) ..................................................... 11, 12

17
*Hanson v. JQD,* LLC,
   Case No. 13-05377 RS, 2014 WL 644469, at *1 (N.D. Cal. Feb. 19, 2014)................................ 4

18
*In re Bluetooth,*

19
   654 F.3d 935 (9th Cir. 2011) ..................................................................... 12

20
*In re Omnivision Technologies, Inc.,*
   559 F.Supp.2d 1036 (N.D. Cal. 2008) ..................................................... 16

21
*Linney v. Cellular Alaska Partnership,*

22
   151 F.3d 1234 (9th Cir. 1998) ................................................................... 11

23
*Misra v. Decision One Mortg. Co.,*
   2009 WL 4581276  (C.D. Cal. 2009) ....................................................... 17

24
*Moore v. Verizon Communications,*

25
   Case No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. August 28, 2013) ........ 12

26
*Officers for Justice v. Civ. Serv. Comm'n of SF,*
   688 F.2d 615 (9th Cir. 1982) ..................................................................... 12

27
*Torrisi v. Tucson Elec. Power Co.,*

28
   8 F.3d 1370 (9th Cir. 1993) ....................................................................... 11

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLMENT**; CASE NO. Case No. 4:13-cv-05377-RS

iii

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................. 11

*Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005)..................................................................... 12

**Statutes**
Civil Code § 5650(b)(2)......................................................................... 2, 6

Civil Code § 5650(b)(3) ............................................................................ 6

Civil Code § 5655 ..................................................................................... 7

Federal Rule of Civil Procedure 23(c)(2)(b).......................................... 17

Federal Rule of Civil Procedure 23(e) ............................................... 3, 11

Federal Rule of Civil Procedure 23(e)(1) .............................................. 17

**Other Authorities**
5 James Wm. Moore, *et al.*, *Moore's Federal Practice,*
  § 23.85(3) (3d ed. 1997) ...................................................................... 12

*Amchem Prods. v. Windsor*,
  521 U.S. 591, 617 (1997)...................................................................... 17

William Rubenstein, Alba Conte & Herbert Newberg,
  3 *Newberg on Class Actions*, §§ 8.21, 8.39 (4th ed.)............................. 17

**Rules**
Pro Solutions Rule 12(b)(6) .................................................................... 13

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS**

iv

1

## NOTICE OF MOTION AND MOTION

2  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3      **PLEASE TAKE NOTICE** that at 1:30 pm on April 27, 2017, Plaintiff and her counsel

4  ("Class Counsel") will move, and hereby do move, this Court before the Honorable Richard

5  Seeborg, United States District Courthouse, 450 Golden Gate Avenue, Courtroom 3, 17th floor,

6  San Francisco, California, 94102, for an Order Granting Final Approval of the Class Action

7  Settlement in this Litigation.

8      The motion is based upon this Notice of Motion and Motion, the Memorandum of Points

9  and Authorities, the Declarations submitted herewith, and the Court's entire record in this matter.

10      The motion is made on the grounds that the Settlement is fair, adequate and reasonable,

11  provides substantial, certain and immediate relief to the Class, is unopposed by any Class Member

12  and enjoys the overwhelming support of the Class, the Named Plaintiff, and Class Counsel.

13

14  Respectfully submitted,

15

16   Dated:  March 17, 2017          **COTCHETT, PITRE & McCARTHY, LLP**

17                      By:   _/s/ Justin T. Berger_
                                JUSTIN T. BERGER
18                              ADAM M. SHAPIRO
                                EMANUEL B. TOWNSEND
19
                            **HOUSING AND ECONOMIC RIGHTS**
20                          **ADVOCATES**

21                              NOAH ZINNER
                                GINA DI GIUSTO
22                          *Attorneys for Plaintiffs and the Proposed Class*

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

After over three years of hard fought litigation, Plaintiff Gena Hanson ("Plaintiff") has obtained an extremely favorable settlement with Defendant JQD LLC ("Pro Solutions" or "Defendant"). The Settlement provides for: (1) substantial changes in Pro Solutions' practices and procedures; (2) 40 percent reduction in Pro Solutions' accumulated fees on active accounts; and (3) a Qualified Settlement Fund of no less than $400,000.

The reaction to the Settlement by the Class has been overwhelmingly positive. Defendants provided the claims administrator with a list of 10,352 premises that are subject to the Settlement, and the claims administrator sent notice of the settlement to all known addresses of the owners of the owners of these premises. (Devery Declaration in Support of Final Approval ("Devery Decl.") ¶¶ 4-8.) Not a single Class Member has objected to the settlement, and only five have opted out of the settlement. (*Id.* ¶¶ 13-14.) Overall, Class Members have submitted 842 payable claims for 732 different properties. (*Id.* ¶ 11.) The average payment to each claimant will be at least $273.37. (*Id.* ¶ 12.)

The positive reaction of the Class is justified. Pursuant to the Settlement, Defendant has agreed to change essentially all of the business practices that gave rise to this litigation, including: Defendant has agreed to terminate "no cost" contracts; charge only late fees that comply with Civil Code § 5650(b)(2); add disclosures to all notices sent to homeowners; apply payments to outstanding assessments prior to fees; accept partial payments; and allow communication between homeowners and their HOA. (*See* Berger Declaration In Support of Final Approval ("Berger Decl."), Exhibit 1 (Settlement Agreement ("Settlement")), Ex. A ¶¶ 1-6.) Defendant also has agreed to reduce outstanding fees of Fee Reduction Sub-Class Members by 40 percent. (*See id.* ¶ 10.)

In addition to changing business practices and reducing outstanding fees of Class Members, Defendant has also agreed to monetary compensation. A Qualified Settlement Fund will be created by the Claims Administrator, and will be funded by Pro Solutions, through its insurer, in the amount of remaining policy limits as of March 10, 2017, less the fees and costs reasonably

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS

2

incurred by Defendant's counsel between March 10, 2016 and Final Approval.  According to counsel for Defendant, as of March 17, 2017, that amount will be at least $500,000.  (Berger Decl. ¶ 13.)  Payments from the Qualified Settlement Fund shall be made to Named Plaintiff, to Class Counsel for attorney's fees and costs, to the Claims Administrator, and the remainder shall be distributed to Participating Cash Relief Sub-Class Members.  (*See* Settlement ¶¶ 3.2 and 3.2.1.) The monetary compensation, debt reduction, and change in business practices are all directly related to the conduct Plaintiff challenged in the lawsuit.  Without the settlement agreement ("Agreement"), Defendant would not be obligated to make these concessions to the Class.  There is no reversion of any kind to Defendant.  There is a *cy pres* provision under the settlement – payments to Participating Cash relief Sub-Class Members that are less than $20 will be distributed to organizations selected by Plaintiff and Class counsel and approved by the Court. (*See* Settlement ¶ 3.2.8.)  Plaintiff and Class Counsel propose that the *cy pres* recipients be Bay Area Legal Aid and California Rural Legal Assistance, both of which have litigated issues related to HOA debt collection.

By all measures, the Settlement — the result of contentious and arms' length negotiations between Class Counsel and counsel for Defendant, which were assisted by three separate neutrals — is more than fair, adequate, and reasonable, and merits final approval of this Court.

Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff herby requests the Court grant final approval of the Settlement in this matter.  The proposed settlement is fair, reasonable, and adequate, results from objective, arms-length negotiation and meets the applicable criteria for this Court's approval.

## II.   RELEVANT PROCEDURAL HISTORY

### A.   The Pleadings

On November 19, 2013, Plaintiff filed this action.  (ECF No. 1.)  Plaintiff, on behalf of a putative Class, alleged that Defendant engaged in illegal and unfair business practices under both federal and California law by collecting debt in a manner that violates legislature-established protections.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS**

3

On January 6, 2014, Defendant filed a motion to dismiss the Complaint, arguing that the Davis-Stirling Common Interest Development Act ("Davis Stirling Act") is inapplicable to Defendant, and the FDCPA claims therefore fail.  (ECF No. 12.)  Defendant argued that without violations of the FDCPA, Plaintiff's allegations of UCL violations also fail.  On February 19, 2014, the Court, while disagreeing with Pro Solutions' argument that the Davis Stirling Act was inapplicable to Defendant's debt collection practices, granted Defendant's motion to dismiss the Complaint in part, with leave to amend, because the Court found it "unclear which specific aspects of Pro Solutions' conduct are being targeted by [Plaintiff's] complaint. . . . This lack of clarity obfuscates the legal theories underlying her claims.  Accordingly, the motion is granted in part with leave to amend."  *Hanson v. JQD*, LLC, Case No. 13-05377 RS, 2014 WL 644469, at *1 (N.D. Cal. Feb. 19, 2014).

On March 19, 2014, Plaintiff filed her First Amended Complaint ("FAC").  (ECF No. 22.)  Plaintiff's FAC alleges that Defendant (1) charged Plaintiffs for collection costs that were not incurred by the HOA under its unlawful "no-cost" business model; (2) charged Plaintiffs excessive late fees; 3) charged Plaintiffs excessive interest; (4) threatened foreclosure when there was no right to foreclose; (5) refused partial payments from homeowners on their debt; and (6) applied payments to collection costs before fulfilling delinquent assessments.  Plaintiff contends that each of the collection activities are prohibited to the principal HOA, and as an agent of the HOA, Pro Solutions is also prohibited from engaging in these practices.

On April 11, 2014, Defendant filed a second motion to dismiss the Complaint, again arguing that the Davis-Stirling Act is inapplicable to Defendant, and the FDCPA claims therefore fail.  (ECF No. 25.)  After full briefing and oral argument, on July 7, 2014, the District Court denied Defendant's motion, holding that "because each challenged business practice gives rise to claims for relief under both the FDCPA and the UCL, defendant's motion is denied in full."  *Hanson v. JQD*, LLC, No. 13-05377 RS, 2014 WL 3404945, at *1 (N.D. Cal. July 11, 2014).  On July 30, 2014, Defendant answered the FAC, denying allegations of wrongdoing and asserting twenty-four affirmative defenses.  (ECF No. 42.)

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS**     4

**B.     Discovery**

The parties exchanged numerous documents and a full set of written discovery.  (*See* Berger Dec. ¶ 7.)  Plaintiff sent Defendant three sets of requests for production of documents.  (*Id.*)  Defendant also sent Plaintiff a request for document production.  (*Id.*)  Both parties propounded interrogatories. (*Id.*)  The deposition of Plaintiff was conducted on June 8, 2015, and lasted over four hours.  (*Id.*)  The depositions of three different representatives for Defendant were held on February 11, 2015; February 12, 2015; and June 26, 2015.  (*Id.*)  In addition, the deposition of a third-party deponent was taken on June 26, 2015.  (*Id.*)

**C.     Mediation**

The first mediation session was held on March 25, 2015, lasted all day, and was facilitated by Marc Alan Fong, an attorney and mediator specializing in HOA law.  (Berger Dec. ¶ 8.)  The parties provided briefs to Mr. Fong on the merits of the case as well as on damages.  (*Id.*)  This initial attempt at mediation was unsuccessful, though the Parties subsequently engaged in weeks of arms-length negotiations that eventually led both Parties to agree to a second mediation session. (*Id.*)

On July 17, 2015, the Parties participated in a second mediation session before JAMS mediator, Hon. William J. Cahill, (Retired).  (Berger Decl. at ¶ 9.)  Again, the Parties provided briefs to Judge Cahill on the merits of the case as well as on damages.  (*Id.*)  At the conclusion of this mediation, which lasted until the evening, the Parties agreed to several changes in Defendant's business practices, but were unable to agree on the monetary portion of the settlement regarding debt relief offered to current Class Members.  (*Id.*)  On July 27, 2015 Judge Cahill offered a mediator's proposal to address the deadlock, and subsequently all Parties agreed to the proposal. (*Id.*)  During the settlement agreement drafting process, further disagreements emerged, and the Parties were unable to reach a final settlement agreement.  (*Id.*)

On December 17, 2015, the Parties were referred to Hon. Magistrate Judge Kandis Westmore for a settlement conference to be held on March 9, 2016.  (*Id.* at ¶ 10.)  The Parties were finally able to come to an agreement on all terms, which were placed on the record with Magistrate

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS                                    5

1    Judge Westmore.  (*Id.*)  On October 18, 2016, the Court granted preliminary approval of the

2    Settlement, and ordered notice to the Class be given.  (ECF No. 80.)

3    **III.    SUMMARY OF SETTLEMENT**

4        **A.    The Class**

5        The settlement Class consists of:  All current or former California homeowners whose

6    HOA accounts were transferred to Pro Solutions and where Pro Solutions, between November 19,

7    2009 to the present, either:  (1) contacted the homeowner and stated a debt amount that included

8    charges not incurred by the HOA; (2) contacted the homeowner and stated a debt amount that

9    included late fees in excess of those authorized under California law; (3) contacted the homeowner

10   and stated a debt amount that included interest in excess of the amount authorized under California

11   law; (3) contacted the homeowner and stated a debt amount that included interest in excess of the

12   amount authorized under California law; (4) threatened or initiated non-judicial foreclosure on

13   assessment debt below $1,800, exclusive of fees; (5) refused payments from a homeowner; and/or

14   (6) collected a payment from the homeowner and applied that payment to the costs of collection

15   before delinquent assessments were paid in full.  (*See* Settlement ¶ 1.3.)  The Settlement Provided

16   for both injunctive relief and monetary relief.

17       **B.    Injunctive Relief**

18       As to injunctive relief, for a period of four (4) years after the entry of the Final Approval

19   Order, Pro Solutions will undertake and implement certain changes to its collection practices and

20   procedures.  These changes include:  (1) Pro Solutions will amend its existing contracts to

21   eliminate "No Cost" provisions; (2) Pro Solutions shall not charge late fees in excess of $10 or

22   10% of the delinquent assessment, whichever is greater, pursuant to Civil Code Section

23   5650(b)(2); (3) Pro Solutions shall not charge interest on delinquent accounts in excess of 12

24   percent per annum as set forth in Civil Code Section 5650(b)(3); (4) all notices sent to

25   homeowners shall include a Notice of Legal Rights to the homeowner, and Pro Solutions will not

26   enter into any payment plans with any homeowner who has yet to receive written notice that

27   includes the foregoing Notice of Legal Rights; (5) payments from homeowners will be applied to

28   outstanding assessments prior to fees; (6) partial payments will not be rejected; (7) Pro Solutions

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS**                6

1   will not prohibit communications directly between HOAs and homeowners; (8) for any file

2   assigned to Pro Solutions prior to the Effective Date of Settlement for Benefits prior to the

3   recording of the first document pertaining to non-judicial foreclosure, following the Effective Date

4   of Settlement for Fees,  Pro Solutions will send homeowners the Notice of Legal Rights, and Pro

5   Solutions will review the file to ensure that any payments made subsequent to the Effective Date

6   of Settlement for Benefits are  properly applied to outstanding assessments prior to fees.  For all

7   other files, Pro Solutions will review the file to ensure that any payments were properly applied to

8   outstanding assessments prior to fees; and (9) Pro Solutions will not request homeowners to waive

9   the protections of Cal. Civil Code section 5655 in the context of payment plans, absent a published

10   opinion of the California Court of Appeals that finds such waiver provisions to be legal or

11   legislation stating such waiver provisions to be legal.  (*See* Settlement ¶ 3.1 and Exhibit A ¶¶ 1-9.)

12         Defendant has also agreed to a fee reduction for a sub-Class of current debtors (the "Fee

13   Reduction Sub-Class").  Upon Final Judicial Approval, on each account, Pro Solutions will reduce

14   the amount of fees that it seeks to collect and retain, as of the Preliminary Approval Date, by 40

15   percent.  Pro Solutions may not back-charge an account retroactively for work that has been done

16   prior to the date of the Final Judicial Approval and reduction of fees, in an attempt to offset the

17   40% reduction.  (*See* Settlement Exhibit A ¶ 10.)

18       **C.    Monetary Relief**

19         Under the terms of the Settlement, the Claims Administrator, the Angeion Group

20   (*Angeion*), will create a Qualified Settlement Fund, which will be funded by Pro Solutions, through

21   its insurer, in the amount of the remaining policy limits as of March 10, 2016, less the fees and

22   costs reasonably incurred by Defendant's Counsel between March 10, 2016 and Final Approval.

23   (*See* Settlement ¶ 3.2.)  According to the latest report from Defendant's Counsel, the Settlement

24   Fund will contain at least $500,000 (Berger Decl. ¶ 13), and the estimated average claim value is

25   $237.37 (Devery Decl. ¶ 12).

26         Each Cash Relief Sub-Class Member's percentage of the Net Class Settlement Fund

27   ("Individual Percentage") shall be calculated by dividing the amount of fees and costs collected

28   and retained by Pro Solutions during the Class Period from each Cash Relief Sub-Class Member

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS     7

by the total amount of amount of fees and costs collected and retained by Pro Solutions during the Class Period from all Cash Relief Sub-Class Members.  The resulting Individual Percentage assigned to each Class Member shall be the percentage of the Net Class Settlement Fund that each Class Member shall be entitled to if he/she submits a timely Claim Form.

As discussed, the gross settlement amount will be at least $500,000.  (Berger Decl. ¶ 13.) Deductions will be made for (a) attorney's fees (requested to be $200,000), (b) attorney's costs and expenses ($19,833.89 requested), (c) a service payment to plaintiff ($5,000 requested), and administration costs of approximately $44,989.  (Devery Decl. ¶ 12.)  This will leave an estimated Net Settlement Fund in the amount of $230,177.11.  (Devery Decl. ¶ 12.)  The estimated minimum claim value is $0.06, the estimated maximum claim value is $2,093.03, and the estimated average claim value is $273.37. Should the Court award costs differently than shown above, or if the Class data changes, these calculations will be changed accordingly.

In the event all Class Members do not make claims and therefore the payments Gross Individual Settlement Payments to Participating Cash Relief Sub-Class Members total less than 100 percent of the Net Class Settlement Fund, the Claims Administrator shall proportionately increase the payment to each Participating Settlement Class Member so that the total settlement payout of Gross Individual Settlement Payments equals 100 percent of the Net Class Settlement Amount.  (Settlement ¶ 3.2.7.)

**D.      Cy Pres**

After reapportionment pursuant to 3.2.7, Gross Individual Settlement Payments to Participating Cash Relief Sub-Class Members that are less than $20 will not be distributed to such Sub-Class Members, and instead will be distributed by *cy pres* to an organization or organizations selected by Plaintiff and Class Counsel subject to approval by the Court.  (Settlement ¶ 3.2.8.) Plaintiff proposes that the *cy pres* recipients be Bay Area Legal Aid and California Rural Legal Assistance, both of which have litigated issues related to HOA debt collection.

**E.      The Release**

The settlement releases Class Members' claims related to all known and/or unknown and unanticipated injuries or damages, including any and all claims now existing or which may arise in

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS

8

1   the future, as well as those not known or disclosed, arising out of Pro Solutions' attempts to collect

2   fees and costs from Class Members during the Class Period.  *Id.* ¶ 8.1.  The settlement releases the

3   Defendant and their affiliated entities as is commonly done with regard to Class action settlements.

4   *Id.* ¶ 1.28.

5          F.     **Class Notice**

6          As noted above, Angeion is the claims administrator in this action.  (Devery Decl. ¶ 1.)  On

7   November 9, 2016, Angeion received from defense counsel a list of names and addresses of

8   possible Class Members in this matter.  (*Id.* ¶ 2)  The format of that data was not usable, and

9   Defendant provided an updated spreadsheet of Class Members on November 21, 2016.  (*Id.*)  The

10  Class list provided listed the premises upon which Defendant collected fees, along will all

11  addresses associated with the owners of those premises.  (*Id.* ¶ 4.)   The parties and Angeion were

12  unable to identify which address was the most recent or valid address, so notice post cards were

13  mailed to each address listed.  (*Id.*)  After removal of unknown premises and duplicate entries on

14  the Class list, there remained 10,352 properties and 25,110 addresses.  (*Id.*)  Of the 10,352 unique

15  properties associated with the Class, 6,015 fell within the subClass that could file a claim for

16  recovery from the settlement fund.  (*Id.*)

17         On January 19, 2017, Angeion causes a notice postcard to be printed and mailed to the

18  25,110 addresses on the Class list.  (Devery Decl. ¶ 5, Ex. A.)  The notice postcard contained a

19  hyperlink to the claims website, which contained a long-form notice, and an electronic claim for

20  cash relief for sub-Class Members.  (*Id.* ¶ 6, Ex. B.)  Seventy-seven notice postcards were returned

21  by USPS with forwarding addresses.  (*Id.* ¶ 7.)  Those postcards were immediately re-mailed.

22  Additionally, 4,742 of the 25,110 notice postcards were returned by USPS with undeliverable

23  addresses.  (*Id.* ¶ 8.)  After performing further address searches, Angeion was able to fund updated

24  addresses 2,586 and re-mailed the notice postcards to these updated addresses.  (*Id.*)  As noted

25  above, Angeion obtained multiple addresses for some Class Members.  There 1,478 instances

26  where an updated address matched a preexisting record that was not returned as undeliverable or

27  where a claim had already been filed.  (*Id.*)  A total of 837 notice postcards remain undeliverable

28  — which constitutes only 3.3 percent of the 25,110 notice postcards originally mailed.  (*Id.*)

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS                    9

**G.     No Class Members Object, Only Five Opt Out, and 842 Submit Payable Claims**

Under the Parties' proposed settlement, and the Court's Preliminary Order, Class Members had the opportunity to opt-out of or object to the Agreement.  Class Members were permitted to opt-out by sending a written request for exclusion to the claims administrator postmarked on or before March 6, 2017, or 30 days from the date a re-mailed notice post-marked.  (ECF Nos. 80 ¶ 11, 82; Settlement ¶ 4.6.)

Class Members also had an opportunity to object to the proposed settlement.  Under the terms of the Agreement, and the Court's Preliminary Approval Order, Class Members who wished to object were required to file with the Court and serve on counsel for the parties a written statement objecting to the settlement on or before the same dates for opt outs.  (ECF Nos. 80 ¶ 18, 82; Devery Decl. ¶ 14.)  Under the terms of the Settlement, Class Members who fail to file and serve timely written objections in the manner specified in the Settlement will be deemed to have waived any objections and will be foreclosed from making any objection to the settlement.

There have been zero objections to the Settlement, and only five persons have submitted requests to opt-out.  (Devery Decl. ¶¶ 13-14.)  None of the persons who submitted opt out requests are eligible to receive a distribution from the settlement fund, and one does not appear to be a Class Member.  (*Id.* ¶ 13.)  The Class list provided by Defendant encompassed 10,374 premises.  (*Id.* ¶ 4.)  Angeion received 842 payable claims for 729 of the properties.  (*Id.* ¶ 11.)  The response and claim filing rate in this matter is comparable with other class action settlements on which the claims administrator has worked, for which final approval has been granted.  (*Id.*)

The opt-out deadline was extended for certain individuals for whom the Class administrator was able to find an update address.  The last re-mail to these individuals occurred on March 2, 2017, and they have thirty days from that date to opt-out of the settlement.  (Devery Decl. ¶ 8.)  After that date, but before the hearing on this motion, Class Counsel will file a supplemental declaration updating the Court on the number of opt-outs.

/ / /

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS

10

1

## IV.   THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL

2

### A.   Legal Standard

3
4
5
6
7
8
9
10

Court approval is required in order to settle a Class action, and the decision to approve or reject a proposed settlement is committed to the district court's sound discretion.  See Fed. R. of Civ. Proc., Rule 23(e); see also *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  The law favors settlement, particularly in Class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  See *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

11
12
13
14
15
16
17
18
19
20

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993) (internal citations and quotations omitted).  That determination is often said to require "a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining Class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Id.* (internal citations and quotations omitted).

21

### B.   The Settlement Is Demonstrably Fair, Reasonable and Adequate

22
23
24
25
26
27
28

The present Settlement is fair, adequate and reasonable given (1) the strengths of Plaintiff's case, (2) the risks, expenses, complexity, and likely duration of further litigation, (3)  the risk of maintaining Class action status throughout trial, (4) the Settlement amount, (5) the extent of completed discovery, (6) the stage of the proceedings, (7) counsel's experience and views of the Settlement and (8) the reaction of the Class Members to the Settlement.  *Alberto v. GMRI Inc.*, 252 F.R.D. 652, 664-65 (E.D.Cal. 2008) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. Cal. 1998)); *see also* 5 James Wm. Moore, *et al.*, *Moore's Federal Practice,* §

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS

11

23.85(3) (3d ed. 1997) 23.353-4).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." (*Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civ. Serv. Comm'n of SF*, 688 F.2d 615, 682 (9th Cir. 1982)).

### 1.    The Settlement was the Result of Arms' Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel who support the settlement as fair, reasonable and adequate.  *See, e.g.*, *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 116 (2d Cir. 2005) (there is a strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery).  Moreover, the use of a mediator in settlement negotiations further supports this presumption of fairness and the conclusion that a settlement is free of collusion.  *See In re Bluetooth*, 654 F.3d 935, 948 (9th Cir. 2011) (participation of a respected mediator is "a factor weighing in favor of a finding of non-collusiveness"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Moore v. Verizon Communications*, Case No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, *31-32 (N.D. Cal. August 28, 2013).

The well-experienced Plaintiff's counsel in this case are among the very few counsel nationwide that practice in the highly specialized area of Class actions brought against HOAs and their vendors.  After almost three years of prosecuting the action, they endorse the settlement as fair, reasonable, and adequate.

In addition, the Settlement was achieved only after protracted arm's-length negotiations – including mediation with Judge William J. Cahill (Ret.), months of subsequent telephonic negotiations and written exchanges between the Parties, and a final settlement conference with Magistrate Judge Westmore.  These settlement discussions were conducted with the aid of a nationally respected mediator and by experienced and well-respected counsel.

### 2.    The Amount and Nature of the Settlement Favor Final Approval

In this case, Defendant is required to change all of the business practices that gave rise to this litigation.

1       Moreover, Defendant is required to provide debt relief to Class Members with open

2  accounts.  As of July 2015, there were approximately 1,300 files open with Defendant, worth $3

3  million in uncollected debt.  Thus, the 40 percent reduction in Defendant's collection fees equates

4  to approximately $1.2 million in debt relief for the Class.

5       Defendant will also provide at least $500,000 for the Settlement Fund, which is the

6  available limit on Defendant's insurance policy.  There is no provision for reversion.  This is a

7  good result for the Class, as Defendant has limited funds available for the settlement.  Defendant

8  asserts, and has verified through updated financials, that Defendant has little liquidity with which

9  to satisfy additional relief, were Plaintiff to obtain it.  There is substantial risk that further losses by

10  Defendant would lead to its insolvency and loss of any compensation for the Class.

11       Based on a $500,000 Settlement Fund, after deductions for attorney's fees, costs, service

12  payment to Plaintiff, and administrative costs, the net settlement fund amount would be

13  $230,177.11.  (Devery Decl. ¶ 12.)  The estimated maximum claim value would be $2,093.03, the

14  estimated minimum claim value would be $0.06, and the estimated average claim value would be

15  $273.37.  (*Id.*)

16       The Parties have vigorously litigated this action, including briefing two motions to dismiss

17  concerning the application of the Davis Stirling Act and the legality of Pro Solutions' business

18  practices.  In spite of these disagreements, the Settlement provides meaningful relief for Class

19  Members with respect to Pro Solutions debt collection practices.

20       Accordingly, the benefit obtained is plainly fair, adequate and reasonable, especially given

21  the Parties' beliefs about the strength of their respective arguments.

22      **3.**     **The Risk, Expense, Complexity and Likely Duration of Further**
23               **Litigation Favor Final Approval**

24       This factor weighs heavily in favor of final approval of the settlement.  The risk, expense,

25  complexity, and likely duration of further litigation can only be characterized as quite significant

26  and would likely result in further appeals regardless of the outcome.

27       The claims alleged by the Settlement Class involve complex legal and factual issues, which

28  the Court previously identified in its orders on Pro Solutions Rule 12(b)(6) motions to dismiss.  If

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS**    13

the action were to proceed to trial, Plaintiff would have to certify the Class against strenuous objections by Defendant.  Defendant has made and will continue to make a vigorous defense to Plaintiff's claims as well as assert numerous affirmative defenses.

As discussed, the parties vigorously disagree about the application of the Davis Stirling Act to the instant action and the legality of Pro Solutions business practices.  Plaintiff alleges the Davis Stirling Act restricts Pro Solutions as the agent of the HOA, while Defendant has countered that the Davis Stirling Act only applies to HOAs.  In deciding to enter into the settlement, Plaintiff considered the range of these legal and factual issues.

If Plaintiff were to prevail on Class certification, liability and damages at trial, Defendant would almost certainly appeal any such decisions or verdict.  For the Settlement Class, the outcome from further litigation and a lengthy appeal would be delayed further and potentially lead to a recovery that is less than the proposed settlement or no recovery at all.  The proposed settlement guarantees a substantial recovery for the Settlement Class now while obviating the need for a lengthy, complex, and uncertain litigation against Defendant.  *See Create-A-Card, Inc. v. INTUIT, Inc.*, 2009 U.S. Dist. LEXIS 93989, at *13.

  **4. Plaintiff Conducted Significant Discovery Prior to the Settlement and were Assisted in Evaluating and Agreeing on Settlement Terms by an Experienced Mediator**

The stage of the proceedings at which this Settlement was reached also favors approval of this Settlement.  Plaintiff conducted sufficient investigation through discovery before settling the matter.

During the three years of litigation, the Parties engaged in extensive discovery requests and responses, exchanged hundreds of pages of information and held extensive and often contentious meet and confer conferences in order to attempt to resolve significant discovery disputes.  Plaintiff served multiple sets of requests for production of documents and requests for admission.  Plaintiff produced numerous of pages of records.  Defendants served numerous requests for production of documents, requests for admission and interrogatories.  Plaintiff has deposed two 30(b)(6) witnesses and a third party deponent as well, while Defendant has deposed Plaintiff.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1    The Parties participated in a mediation session before Judge Cahill and Judge Westmore.

2    Plaintiff did not settle until their concerns regarding Pro Solutions business practices were

3    addressed.  Plaintiff also factored in the retention of highly qualified and tenacious counsel, who

4    have experience in these claims, and who demonstrated extraordinary vigor at each stage of this

5    litigation.  Accordingly, Plaintiffs' diligence in evaluating and settling this matter is a factor

6    warranting final approval.

### 5.    Class Counsel's View on the Settlement Based Upon Their Experience Prosecuting Trust Class Actions Favors Final Approval

9    Class Counsel support the Settlement as fair, reasonable, and adequate, and in the best

10   interest of the Classes.  (Berger Decl. ¶ 11; Declaration of Gina Di Giusto (Di Giusto Decl.) ¶ 6.)

11   The judgment of experienced counsel regarding the settlement is entitled to great weight.  *See*

12   *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal. 1979); *Ellis v. Naval Air Rework Facility*,

13   87 F.R.D. 15, 18 (N.D.Cal. 1980) ("[T]he fact that experienced counsel involved in the case

14   approved the settlement after hard-fought negotiations is entitled to considerable weight."). The

15   recommendation of Class Counsel should be given a presumption of reasonableness.  *See Boyd*,

16   485 F. Supp. at 622.

17   Class counsel have extensive experience prosecuting financial and fiduciary malfeasance

18   claims and are nationally recognized Class action litigators.  (Berger Decl. ¶¶ 3-5, Ex. 2; Di Giusto

19   Decl. ¶¶ 2-3.)  This experience allowed Class Counsel to tailor its discovery and investigation, to

20   accurately assess Defendants' exposure, to understand the value of the litigation and the strengths

21   and weaknesses of each party's claims, and assess the relationship between the amount of the

22   settlement and the value of a possible recovery through trial.

23   Further, as a result of the sustained effort in litigating this case over three years, Class

24   Counsel have effectively negotiated the proposed Settlement with ample knowledge of the factual

25   and legal issues underlying the claims and defenses in the action, the strengths and weaknesses of

26   Plaintiff's case and Pro Solutions' defenses.

27

28   / / /

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS     15

1

2

### 6.    Class Members' Positive Reaction to the Settlement Favors Final Approval

3

The Court may look to the reaction of the Class Members in determining whether the

4

Settlement is fair, adequate, and reasonable, and a low number of opt-outs and objections by Class

5

Members supports the conclusion that a Class action settlement is fair, adequate, and reasonable.

6

*Churchill Villages, LLC v. General Electric*, 361 F.3d 566, 575-76, 577 (9th Cir. 2004), cert.

7

denied, 543 U.S. 818 (2004); *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1043

8

(N.D.Cal. 2008).

9

The Class administrator filed a declaration describing the process for mailing notice to the

10

Class Members.  (Devery Decl.)  Because multiple addresses were listed for each Class Member,

11

and it was unclear which address the most recent or valid, notice was mailed to 25,110 addresses

12

associated with 10,352 properties.  (Devery Decl. ¶ 4.)  An additional 2,586 notices were mailed to

13

Class Members whose initial one was undeliverable.  (*Id.* ¶ 8.)  Angeion also remailed notice to 77

14

Class Members whose notice post card were returned forwarding addresses.  (*Id.* ¶ 7.)  A total of

15

934 notice postcards remain undeliverable, which is only 3.7 percent of notices originally mailed.

16

(*Id.*)

17

The response of Class Members has been overwhelmingly favorable.  **<u>Zero objections to</u>**

18

**<u>the Settlement were filed, and just five Class Members have requested to opt out and be</u>**

19

**<u>excluded from the Settlement.</u>**  (Devery Decl. ¶¶ 13-14.)  Moreover, the claims administrator has

20

received 842 payable claims for 732 different properties.  (*Id.* ¶ 11.)  This constitutes over 12

21

percent of the premises that fell within the sub-Class that could file a claim for recovery from the

22

settlement fund.  (*Id.* ¶ 4.)  According to the claims administrator, the response and claim filing

23

rate in this matter is comparable with other Class action settlements on which he has worked, for

24

which final approval has been granted. (Id. ¶ 11.)

25

The extremely low number of opt-outs and even fewer objections indicates acceptance and

26

approval of the Settlement's terms by Class Members and strongly supports the conclusion that

27

final approval should be granted.  *Churchill Villages, LLC v. General Electric*, 361 F.3d at 577.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** CASE NO. Case No. 4:13-cv-05377-RS                              16

### C.     The Notice Procedures Carried Out Satisfy Due Process Requirements

The Court approved notice, which was provided to 25,110 addresses associated with Class Members, satisfies all due process requirements.  It was reasonably calculated to provide actual notice to Class Members of the Settlement and the final approval hearing.  *See Churchill Villages, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (holding that notice is sufficient if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard); *Misra v. Decision One Mortg. Co.*, 2009 WL 4581276 at *9 (C.D. Cal. 2009) (approving direct mail notice, updated through National Change of Address Database, and "skip tracing" for returned notice); *see also* William Rubenstein, Alba Conte & Herbert Newberg, 3 *Newberg on Class Actions*, §§ 8.21, 8.39 (4th ed.) ("*Newberg*").

Rule 23(e)(1) requires that notice be directed "in a reasonable manner to all Class Members who would be bound by a proposed settlement." Class members are entitled to the "best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(b).  The notice must contain the following information, in clear, plain and easily understood language:  (1) the nature of the action; (2) the definition of the settlement Class; (3) the claims, issues or defenses; (4) that a Class Member may appear in the action through an attorney; (5) that the court will exclude people who request exclusion and explains when and how to do so; and, (6) the binding effect of judgment on Class Members.  *Id.*  Notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

Pursuant to this Court's Order, as described in detail above, Class notice was sent to 25,110 addresses, with just 934 of those notices returned as undeliverable with no updated address information.  (Devery Decl. ¶¶ 5, 8.)  The short form notice described the nature of the action; the definition of the Class, including that it encompassed all California homeowners whose HOA accounts were transferred to Pro Solutions between November 2009 and the present and were subject unlawful debt collection practices; the Class Members rights; the procedures for requesting exclusion from the Class and for objecting to the settlement; and Class Counsel's attorney's fees and contact information.  (Devery Decl. Exs A and B.)  The short form notice also included a link

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; CASE NO. Case No. 4:13-cv-05377-RS                    17

to website which contained the long form notice.   (*Id.*)  The long form notice described the terms

of the settlement in detail, including the nature of the claims released by the settlement.  (Devery

Decl. Ex. C at pp. 8-9.)  This satisfies Rule 23 and due process.

**V.     CONCLUSION**

For the foregoing reasons, the Court should grant Final Approval of the Settlement.

Respectfully submitted.


Dated:  March 17, 2017                    **COTCHETT, PITRE & McCARTHY, LLP**


By:   ___*/s/ Justin T. Berger*___
         JUSTIN T. BERGER
         EMANUEL B. TOWNSEND
         ADAM M. SHAPIRO


**HOUSING AND ECONOMIC RIGHTS
ADVOCATES**

NOAH ZINNER
GINA DI GIUSTO

*Attorneys for Plaintiffs and the Proposed Class*